UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                             :

ADAM THOMAS WARMIN,          :

                             :

                 Plaintiff,   :

                             :

              v.                :

                             :

NEW YORK CITY DEPARTMENT OF   :
EDUCATION, CARMEN FARIÑA, MELODIE :
MASHEL, and ALEXIS MARRERO,     :

                             :

                Defendants. :

                             :

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 22, 2018

16 Civ. 8044 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Plaintiff Adam Warmin worked as a special education teacher for the New York City Department of Education (the "DOE") from 2012 until his termination in 2015. Plaintiff now alleges that Alexis Marrero, the principal at his school, became aware of Plaintiff's dyslexia in 2014, and that the DOE, along with Superintendent Melodie Mashel and Chancellor Carmen Fariña (together with Marrero, Mashel, and the DOE, "Defendants"), discriminated against him by failing to accommodate his disability, retaliating against him, and ultimately terminating his employment. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6); they argue that the issues alleged in Plaintiff's Amended Complaint were raised and decided in an Article 78 proceeding in the New York State Supreme Court, New York County, and that, in any event, Plaintiff fails to state a claim upon which relief can be

granted.  The Court agrees with Defendants and grants the motion, but will grant Plaintiff leave to amend his pleadings once more.

**BACKGROUND**[1]

**A.  Factual Background**

**1.  Plaintiff's Employment at DOE**

The following facts are taken from the Amended Complaint, the well-pleaded allegations of which are assumed to be true for purposes of the instant motion.  *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam).  Plaintiff was diagnosed with dyslexia in 1994, and this condition causes him "difficulty [with] reading and writing." (Am. Compl. ¶ 1).  In October 2012, Plaintiff began working as an "integrated co-teaching teacher ('ICT')" for special education students at I.S. 254 in the Bronx where he remained until his termination in August 2015.  (*Id.* at ¶¶ 2-3).  In the 2012-13 school year, Plaintiff taught Grades 6 through 8 and received a "satisfactory" rating.  (*Id.* at ¶ 3).  In the 2013-14 school year, Plaintiff continued as an ICT and began to work in Special Education Teacher Support Services ("SETSS") for Grades 6 through 8.  (*Id.* at ¶ 4).

During the 2013-14 school year, the DOE implemented a new teacher evaluation system, wherein a reviewer would select certain performance

---

[1] This Opinion draws facts from Plaintiff's Amended Complaint (Dkt. #25 ("Am. Compl.")). The Court takes judicial notice of the Verified Petition filed in *Warmin* v. *City of New York*, Index No. 102211/15, which is attached as Exhibit 1 to the Branch Declaration in Support of Defendants' Notice of Motion to Dismiss the Amended Complaint (Dkt. #29 ("Branch Decl."), 29-1 to 29-7 ("Verified Pet.")), and Justice Alice Schlesinger's October 27, 2016 Order dismissing Plaintiff's claims in the same, which is attached as Exhibit 5 to the Branch Declaration (Dkt. #29-11 ("Sup. Ct. Order")).

categories in which to rate the teacher at the time of the observation. (Am. Compl. ¶ 4). In the first semester of the 2013-14 school year, Plaintiff received an "effective" rating in eight categories and a "developing" rating in two categories; in the second semester, he was rated as "effective" in six categories and as "developing" in sixteen categories. (*Id.* at ¶ 5). Plaintiff's overall rating for the 2013-14 school year was "effective." (*Id.*).

In the 2014-15 school year, Plaintiff again continued as an ICT for sixth grade math and worked in SETSS for sixth through eighth grades. (Am. Compl. ¶ 6). That year, I.S. 254 had a new principal, Alexis Marrero. (*Id.* at ¶ 7). In the fall semester, "a student's mother complained about a comment on her child's Individualized Education Plan ('IEP')" that her child was a "gangster." (*Id.* at ¶ 8). Plaintiff "discovered that there was an ongoing investigation into this comment and contacted [his] union chapter leader of the [United] Federation of Teachers [('UFT')], Verona Dormer[,] ... to discuss [his] knowledge of this matter." (*Id.* at ¶ 8). On November 17, 2014, Dormer met with Marrero and "informed [Marrero that Dormer] had encouraged [Plaintiff] to share information which [Plaintiff] had disclosed to her regarding the IEP document." (*Id.* at ¶ 9). Dormer requested that Plaintiff be granted immunity if he participated in a "non-disciplinary meeting" with Marrero. (*Id.*).

Later on November 17, 2014, Plaintiff attended such a meeting with Dormer and Marrero and made statements "under the guise that [he] had immunity." (Am. Compl. ¶ 10). Plaintiff explained that he had drafted the IEP as a favor for another teacher and, further, "that [he] had made a typographical

3

error in the comment, and the comment was supposed to state that the student referred to 'himself as being a gangster.'" (*Id*.). Plaintiff alleges that he informed Marrero at this meeting that he "had made this typographical error because [he is] dyslexic" and "disclosed that this disability sometimes causes [him] to experience minor reading and writing challenges." (*Id*.). Plaintiff claims that Marrero's knowledge of Plaintiff's disability at this point in 2014 is confirmed by a fax that Marrero sent on November 21, 2014. (*Id*. at ¶ 11). By Plaintiff's telling, Marrero faxed a "fraudulently completed" document to the DOE Office of Special Investigations, without Plaintiff's or the UFT's knowledge, to make it appear as if Plaintiff "had intentionally included the 'gangster' comment in the IEP, instead of being the result of [his] dyslexia." (*Id*. at ¶¶ 11-12). Plaintiff alleges that the transmission of this document (i) interfered with his grievance rights and his right to "make inquiries as to who impersonated [him]" and (ii) included medical information about his disability without his consent. (*Id*. at ¶ 12).

According to the Amended Complaint, Plaintiff continued to receive mixed reviews for his teaching. On November 25, 2014, Marrero observed Plaintiff's class and issued him an "effective" rating in three categories and a "developing" rating in three categories. (Am. Compl. ¶ 14). On December 3, 2014, Marrero "rescinded [Plaintiff's] … immunity and issued a letter to [Plaintiff's] file" stating that Plaintiff had "'exercised poor judgment' when writing in the student's IEP." (*Id*. at ¶ 15). Plaintiff avers that this was the first disciplinary letter he received during his employment at DOE. (*Id*.). On

January 29, 2015, Assistant Principal Rhonda Naidich gave Plaintiff an "ineffective" rating in six categories and an "effective" rating in two categories. (*Id.* at ¶ 16). On March 19, 2015, Naidich evaluated Plaintiff again, this time giving him a "developing" rating in five categories and an "effective" rating in three categories. (*Id.* at ¶ 17).

In March 2015, Plaintiff received a second disciplinary letter. At the end of that month, Plaintiff met with Dormer and Marrero "to discuss a draft of a letter" that Plaintiff wrote and which was sent out to a parent. (Am. Compl. ¶ 18). Plaintiff alleges that he gave "a draft letter that was unsigned and contained typographical errors" "to the attendance coordinator[,] Mr. Torres[,] to review and edit before it was sent out to the parent." (*Id.*). Instead of receiving an edited version of the letter in return, Plaintiff alleges that the letter was sent out to the parent "with many errors." (*Id.*). Plaintiff claims not to know why the letter was sent out, and states that Mr. Torres had assisted him with drafting letters in the past. (*Id.* at ¶¶ 18-20). Nevertheless, Plaintiff received a disciplinary letter for sending this letter to a parent. (*Id.* at ¶ 19).

On April 1, 2015, Marrero sent Plaintiff a letter in which he "advised [Plaintiff] to seek accommodations concerning [Plaintiff's] disability [from] the DOE and also gave [Plaintiff] the DOE's Accommodation Request Form." (Am. Compl. ¶ 21). Plaintiff states that the form "is for qualified individuals with a disability to request a reasonable accommodation in order to assist in performing the essential functions of their present assignment." (*Id.*). Plaintiff discussed the form with his UFT representative and spoke with a DOE

employee who assisted him in completing the form. (*Id.* at ¶¶ 22-23). On June 9, 2015, Plaintiff submitted a disability accommodation request that asked for "extra time to complete written tasks, a scanner and a screen reader to read documents back, a word processor, a printer and an individual to help [him] proof[]read important and sensitive documents." (*Id.* at ¶ 25).

Meanwhile, on April 20, 2015, Marrero observed Plaintiff and gave him an "'ineffective' in [two] categories, 'developing' in [three] categories[,] and 'ineffective' in [one] category." (Am. Compl. ¶ 24). The Court assumes that one of these ratings should read "effective," but it is not clear from the Amended Complaint whether Plaintiff was rated "effective" in two categories and "ineffective" in one category or vice versa.

 Plaintiff alleges three significant events that took place on June 19, 2015. *First*, Plaintiff received partial approval of his accommodation request — the DOE granted him extended time to complete written work. (Am. Compl. ¶ 28). *Second*, Plaintiff received his evaluation in Measures of Teaching Practice ("MOSEL") — "a combination of the principal and assistant principal's evaluations for the school year" — in which he was rated "developing." (*Id.* at ¶ 26). *Third*, and most critically, Plaintiff received a notice from Superintendent Mashel that his "Certification of Completion with [the] DOE was denied" and, as Plaintiff describes it, "she terminated [Plaintiff's] appointment at I.S. 254 and District 10." (*Id.* at ¶ 29).[2] Mashel's June 19,

---

[2]     To be clear, the notice in question stated merely that Plaintiff's "appointment shall terminate" within the prescribed time period, and not that he was terminated. (Verified Pet., Ex. A). As a practical matter, the difference may be one of semantics.

2015 letter provides that Plaintiff's termination would go into effect on the earlier of 60 days from the date of the letter or on October 2, 2015 — accordingly, his termination became effective on August 19, 2015. (Verified Pet., Ex. A).

Plaintiff alleges that principals typically place poor-performing teachers on a Teacher Improvement Plain ("TIP") that identifies "areas of weakness … and gives direct guidance and instruction to improve[] along with a timeline and a plan for assessing improvement." (Am. Compl. ¶ 30). Plaintiff states he was not given a TIP. (*Id.*). Plaintiff further alleges that "Dormer requested a tenure meeting with Principal Marrero on several occasions" to "inquir[e] whether [Plaintiff's] probation would be terminated, extended[,] or if [Plaintiff] would be awarded tenure." (*Id.* at ¶ 31). Marrero was noncommittal, and the meeting never happened. (*Id.*). Thereafter, in "August-September 2015" Plaintiff received an Annual Professional Performance Review ("APPR"); this accounts for a teacher's MOSEL score and state and local student testing, and provides an overall rating. (*Id.* at ¶ 27). Plaintiff's APPR rating for the 2014-15 school year was "effective." (*Id.*).

### 2. Plaintiff's Article 78 Proceeding

Several months after his termination became effective, on December 18, 2015, Plaintiff filed a Verified Petition under Article 78, N.Y. C.P.L.R. § 7804, in New York County Supreme Court against the City of New York, the DOE, and Fariña (collectively, "Respondents") to "challenge, reverse, and annul [the DOE's] arbitrary and capricious, wrongful, discriminatory[,] and bad faith

termination/denial of completion of probation of Petitioner's[3] probationary employment[.]" (Verified Pet. ¶ 1). The allegations therein largely track those in the Amended Complaint.

### a. Allegations in Plaintiff's Verified Petition

Plaintiff alleged that his termination was baseless and, "most importantly, ... discriminatory and retaliatory," insofar as the DOE issued negative reviews of Plaintiff "after [he] informed them of his disability." (Verified Pet. ¶ 3). The Verified Petition chronicled Plaintiff's reviews while employed by the DOE (*id.* at ¶¶ 11, 18, 30, 32); his December 3, 2014 disciplinary letter for inserting a comment in a student's IEP that the student was a "gangster" (*id.* at ¶¶ 13-17, 19); and his March 31, 2015 disciplinary letter for sending an unedited letter to a parent (*id.* at ¶¶ 23-24).

Beginning with the first disciplinary letter, Plaintiff alleged that he discussed the IEP comment with Marrero at the November 2014 meeting under the belief that he had "immunity from any disciplinary action," and, further, that he told Marrero about his dyslexia, which "sometimes causes him to make typographical errors such as that pertaining to [the] IEP." (Verified Pet. ¶¶ 15-17; *see also id.* at Ex. D (December 3, 2014 disciplinary letter)). And with respect to the second disciplinary letter, Plaintiff alleged that he informed Marrero that he intended to edit the parent letter before sending it, while "reiterat[ing] that his disability caused him to occasionally make spelling or grammatical errors." (*Id.* at ¶ 23). Plaintiff's Verified Petition stated that the

---

[3]      Plaintiff is referred to as "Petitioner" in the Verified Petition.

March 31, 2015 disciplinary letter also pertained to an additional infraction (not mentioned in the instant litigation) wherein Plaintiff was reprimanded for alleged spelling errors on his bulletin board. (*Id.*). Plaintiff attached a copy of the March 31, 2015 disciplinary letter — along with a copy of the parent letter and photos of his bulletin board — as an exhibit to his Verified Petition. (*Id.*, Ex. H).

After reciting these facts, Plaintiff's Verified Petition argued that Plaintiff's termination was discriminatory and improper:

> Petitioner never had an opportunity to display his pedagogical abilities after he was granted an accommodation for his disability. Petitioner's administration was aware of his disability as early as November 17, 2014, before the issuance of Petitioner's observations for the 2014-15 school year. As such, the observations that Petitioner received during the 2014-15 school year do not reflect how Petitioner would have performed if given a reasonable accommodation. As Petitioner was only granted [a] reasonable accommodation for his disability on the day of his discontinuance, it was improper for Respondents to rely on Petitioner's pedagogical assessments in assessing his fitness as a teacher.

(Verified Pet. ¶ 37). Plaintiff alleged that he had been unable to obtain work as a teacher since his termination, and requested expungement of all disciplinary action from his personnel file. (*Id.* at ¶¶ 33, 40).

### b.    The Supreme Court's Order

On October 27, 2016, Justice Alice Schlesinger dismissed Plaintiff's Verified Petition with prejudice. (Sup. Ct. Order 7). Her recitation of the facts discusses Plaintiff's mixed reviews and the two disciplinary letters. (*Id.* at 1-5). Justice Schlesinger accepted Plaintiff's allegation that he told Marrero about

his disability in November 2014, but noted that "[P]etitioner did not request an accommodation or request assistance at that time (not doing so until June 2015 at the end of the school year, as discussed below)," and, indeed, that he failed to request an accommodation even after being criticized for the letter sent to a parent. (*Id.* at 2-4).

The Supreme Court ultimately found that Plaintiff's termination was based on "more than the IEP incident and 'typographical' errors in the draft letter to the parent coordinator, despite [P]etitioner's framing of the proceeding," and concluded that Plaintiff "clearly fails to meet his burden in showing bad faith." (Sup. Ct. Order 6). Justice Schlesinger found that the school determined that Plaintiff's teaching style did not challenge students; he "exercised poor judgment" in writing the "gangster" comment in a student's IEP; he wrote "inappropriately sarcastic" and "condescending" remarks to students on his bulletin board; and he sent an "incomprehensible" letter to a parent. (*Id.* at 2-4). Plaintiff's negative evaluations, coupled with his "persistent inability or refusal to improve and/or take recommended steps to improve his teaching," and his failure to "avail himself of … opportunities" to help him improve, supported a finding that the DOE did not act in bad faith. (*Id.* at 6). The Supreme Court found that "the errors at issue were far more than 'typographical' in nature and demonstrate[d] significant problems in [P]etitioner's ability to interact and communicate with his students," problems that Plaintiff refused to remediate despite DOE's offers of assistance with his

writing.  (*Id.* at 6-7).  Accordingly, Justice Schlesinger dismissed the Verified Petition.  (*Id.* at 7).

## B.    Procedural Background

Plaintiff initiated this action on October 11, 2016.  (Dkt. #2).  Following an unsuccessful mediation, Defendants sought leave to file a motion to dismiss.  (Dkt. #20).  The Court held a pre-motion conference with the parties on May 11, 2017, and ordered Plaintiff to amend his complaint and set a schedule for briefing on Defendants' motion.  (Dkt. #24).  Plaintiff filed the Amended Complaint on June 15, 2017.  (Dkt. #25).  Defendants filed their motion to dismiss on July 27, 2017.  (Dkt. #28-30).  Plaintiff filed a letter response to Defendants' motion on September 14, 2017.  (Dkt. #32).  Defendants filed a reply brief in support of their motion on September 30, 2017.  (Dkt. #33).

## DISCUSSION

## A.    Plaintiff's Claims in the Amended Complaint

Plaintiff's initial Complaint in this matter was completed using the Court's standard form complaint for employment discrimination cases.  (Dkt. #2).  Plaintiff checked boxes to denote that he was bringing claims under the Americans with Disabilities Act of 1990 ("ADA"), 29 U.S.C. §§ 621-34; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290-97; and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101 to 8-131.  (*Id.*).  He alleged that Defendants had wrongfully terminated him, failed to accommodate his disability, retaliated against him, and "refuse[d] to

clear me to NYC DOE." (*Id.* at 2-3).  The Amended Complaint omits the sheet containing the statutes from which plaintiffs are asked to select, and thus did not reference any specific statutes.  (*See generally* Am. Compl.).

Nonetheless, the Court reviews the Amended Complaint in light of the Second Circuit's decision in *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154 (2d Cir. 2017), and finds that it asserts claims of discrimination, failure to accommodate, and retaliation under the ADA, the NYSHRL, and the NYCHRL. Plaintiff raises additional claims in his letter opposing Defendants' motion to dismiss, namely, claims for "discrimination and retaliation under .... The Rehabilitation Act of 1973, § 504, and 42 U.S.C. § 1983."  (Pl. Opp. 2).  In recognition of the special solicitude owed a *pro se* Plaintiff, the Court will liberally construe Plaintiff's submissions and analyze these claims as well.[4]

## B.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Defendants move to dismiss the Amended Complaint on three bases: (i) Plaintiff's claims under the NYSHRL and the NYCHRL are barred by Plaintiff's failure to file a "notice of claim" with the DOE and, in any event, are untimely; (ii) Plaintiff's claims are precluded by the Supreme Court's Order in the Article 78 action; and (iii) Plaintiff fails to state a claim upon which relief

---

[4]     Courts in this District have sometimes declined to consider new legal claims (as distinguished from additional facts) raised in a legal brief or other submission by a *pro se* litigant in response to a motion to dismiss.  *See Mira* v. *Argus Media*, No. 15 Civ. 9990 (RJS), 2017 WL 1184302, at *3 n.4 (S.D.N.Y. March 29, 2017) (citing cases). Because the Court grants Plaintiff leave to re-plead and wishes to provide Plaintiff sufficient guidance in doing so, the Court discusses Plaintiff's newly-raised Rehabilitation Act and § 1983 claims to explain why the former is deficient on the face of the Amended Complaint and why the latter claim could never succeed, and thus may not be added to any subsequent pleading.

can be granted. (*See generally* Def. Br.; Def. Reply). All three are affirmative defenses that are properly raised under Federal Rule of Civil Procedure 12(b)(6). *See Staehr* v. *Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("The lapse of a limitations period is an affirmative defense that a defendant must plead and prove."); *O'Connor* v. *Pierson*, 426 F.3d 187, 194 (2d Cir. 2005) ("Claim preclusion is an affirmative defense[.]").

When considering a motion to dismiss under Rule 12(b)(6), a district court must "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 548 F.3d 82, 88 (2d Cir. 2009)). Though Rule 8 "does not require detailed factual allegations, … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff will be entitled to relief if he alleges "enough facts to state a claim to relieve that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 554, 570 (2007). The Court is not bound to accept conclusory allegations or legal arguments couched as factual conclusions. *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents

incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

Where a plaintiff proceeds *pro se*, a court will review his pleadings "liberally and 'interpret them to raise the strongest arguments that they suggest.'" *Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). That said, the Court ought not "read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not 'suggest[.]'" *Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citations omitted). In this regard, a *pro se* litigant is "not exempt ... from compliance with relevant rules of procedural and substantive law[.]" *Id.* (quoting *Traguth* v. *Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)).

## C.    Plaintiff's NYSHRL and NYCHRL Claims Against the DOE, Fariña, and Mashel Must Be Dismissed for Failure to Comply with the New York Education Law

The New York Education Law provides that, as a precondition to suit "for any cause whatever" against a board of education or officer thereof, a plaintiff's complaint must allege that (i) "a written verified claim upon which such action ... is founded was presented to the governing body of said district ... within three months after the accrual of such claim" and (ii) the governing body of the district has failed or refused to "make an adjustment or payment thereof for thirty days after such presentment." N.Y. Educ. Law § 3813(1); *see also Parochial Bus Sys., Inc.* v. *Bd. of Educ.*, 60 N.Y.2d 539, 549 (1983) ("The

Legislature has spoken unequivocally that no action or proceeding may be prosecuted or maintained against any school district or board of education unless a notice of claim has been 'presented to the governing body[.]'" (quoting § 3813(1))). [5]  In so providing, the Education Law imports the notice of claim requirement under the New York General Municipal Law that applies to tort actions against a public corporation.  *See* N.Y. Gen. Mun. Law § 50e-(1)(a).

A superintendent or chancellor of a board of education is an officer on whom a notice of claim must be filed, but a school principal is not.  N.Y. Educ. Law § 2(13); *Collins* v. *City of N.Y.*, 156 F. Supp. 3d 448, 460 (S.D.N.Y. 2016). Because compliance with § 3813(1) is a condition precedent to a suit against a board of education or its officers, a plaintiff's failure to plead compliance mandates dismissal of his claims.  *See Lewinter* v. *N.Y. City Dep't of Educ.*, No. 09 Civ. 227 (PGG), 2010 WL 2746334, at *2 (S.D.N.Y. July 9, 2010); *Varsity Tr., Inc.* v. *Bd. of Educ. of City of N.Y.*, 5 N.Y.3d 532, 536 (2005) (reversing ruling permitting claim to go forward where the plaintiff had not filed notice of claim); *see also id.* ("We have repeatedly rejected, and now reject again, proposals to compromise the strict statutory notice of claim requirement[.]").

Plaintiff freely acknowledges that he did not timely file his notice. Plaintiff received a letter on June 19, 2015, informing him that his probationary employment would not be continued and would be terminated effective on the earlier of October 2, 2015, or 60 days from the date of the

---

[5]     The notice of claim requirement only applies to Plaintiff's state-law claims.  *Hardy* v. *N.Y. City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999).

letter. (Verified Pet., Ex. A). Thus, Plaintiff's termination became final on August 19, 2015, and his claim had arisen by then, if not sooner. Plaintiff states that he filed a notice of claim with the New York City Comptroller on December 1, 2015 — more than three months after August 19, 2015. (Pl. Opp. 2). In his opposition brief, Plaintiff argues that "the Second Circuit has never held that a district court lacks jurisdiction to grant a late filing of a notice of claim." (Pl. Opp. 2, n.2 (citing *Corcoran* v. *N.Y. Power Auth.*, 202 F.3d 530, 540 (2d Cir. 1999) (declining to reach question of whether a federal district court can grant a late notice of claim))). Nevertheless, Plaintiff's claim fails in light of New York General Municipal Law § 50-e(7), under which an application to file a late notice of claim must be made in state court. N.Y. Gen. Mun. Law § 50-e(7). "Until the state legislature amends § 50-e(7) to include federal trial courts, this Court has no choice but to dismiss for lack of jurisdiction an application to file a late notice of claim or to have a notice of claim deemed timely filed." *Washington* v. *Borough of Manhattan Cmty. Coll.*, No. 16 Civ. 6168 (PAE), 2016 WL 7410717, at *2 (S.D.N.Y. Dec. 21, 2016) (internal quotation marks and alterations omitted).

Accordingly, the Court agrees with Defendants that Plaintiff's NYSHRL and NYCHRL claims against the DOE, Fariña, and Mashel must be dismissed on this basis. (*See* Def. Br. 21-23). Because Plaintiff could make an application in state court to file a late notice of claim, the Court dismisses these claims without prejudice. *Washington*, 2016 WL 7410717, at *2. By contrast, a school principal such as Marrero is not an officer on whom notice

must be served, and Plaintiff's NYSHRL and NYCHRL claims against Marrero may thus proceed.

**D. Plaintiff's NYSHRL and NYCHRL Claims Against Marrero Are Timely**

Typically, the statute of limitations for claims under the NYSHRL and NYCHRL is three years. N.Y. C.P.L.R. § 214(2); N.Y. City Admin. Code § 8-502(d). However, the New York Education Law expressly provides that "notwithstanding any other provision of law providing a longer period of time in which to commence an action[,] ... no action ... shall be commenced against any [board of education or officer thereof] more than one year after the cause of action arose[.]" N.Y. Educ. Law § 3813(2-b). Defendants argue from this provision that Plaintiff's NYCHRL and NYSHRL claims are untimely. (Def. Br. 23-24). But because Marrero is a principal, he is not considered an officer of a board of education as defined under the New York Education Law § 2(13), and thus the three-year statute of limitations applies. Plaintiff filed this action on October 11, 2016, well within the three-year limitations period; his claims against Marrero are timely.

**E. Plaintiff's Disability Discrimination Claims Are Largely Precluded by the Article 78 Proceeding**

**1. Applicable Law**

Defendants further argue that Plaintiff's claims must be dismissed under the doctrine of collateral estoppel (also known as issue preclusion) in light of the Supreme Court's dismissal of his Article 78 Petition. Under New York law, collateral estoppel bars relitigation of an issue that is "[i] identical to an issue already decided [ii] in a previous proceeding in which that party had a full and

fair opportunity to litigate, and where [iii] the issue that was raised previously is decisive of the present action."[6] *Indus. Risk Insurers* v. *Port Auth. of N.Y. and N.J.*, 493 F.3d 283, 287-88 (2d Cir. 2007) (quoting *Curry* v. *City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (internal quotation marks and alteration omitted)). Where these elements are met, "issue preclusion is applicable even if the two suits are not based on the same cause of action." *Proctor* v. *LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013). The party asserting the doctrine — here, Defendants — bears the burden of showing that the identical issue was necessarily decided, while Plaintiff bears the burden of showing he lacked a full and fair opportunity to litigate the issue in the prior forum. *Id.*

"[N]on-mutual collateral estoppel allows a defendant who was not a party to the previous litigation to rely on ... collateral estoppel to bar ... issues raised in subsequent litigation, assuming the issue was fully and fairly litigated in the first instance." *Ranasinghe* v. *Kennell*, No. 16 Civ. 2170 (JMF), 2017 WL 384357, at *3 (S.D.N.Y. Jan. 25, 2017) (citing *Blonder-Tongue Labs., Inc.* v. *Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971)). Here, Mashel's and Marrero's defenses implicate non-mutual collateral estoppel, because unlike the DOE and Fariña, they were not parties to the Article 78 proceeding.

### 2. Analysis

Plaintiff's remaining claims include: (i) discrimination and retaliation under the ADA, the Rehabilitation Act, and 42 U.S.C. § 1983 as to all

---

[6]     A court looks to the law of the rendering state to determine the preclusive effect of a judgment. *Conopco, Inc.* v. *Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000).

Defendants; (ii) failure to accommodate under the ADA against all Defendants; and (iii) discrimination, retaliation, and failure to accommodate under the NYSHRL and the NYCHRL against Marrero.  To understand the degree, if any, to which these claims are precluded, the Court must compare the Amended Complaint here to the Verified Petition in the Article 78 proceeding.  In the earlier matter, Plaintiff alleged that his termination was "arbitrary and capricious, wrongful, discriminatory and [in] bad faith[.]"  (Verified Pet. ¶ 1). He further alleged that he informed Alexis Marrero, the principal of I.S. 254, in November 2014 that he had a disability — dyslexia — "which sometimes causes him to make typographical errors," and that he raised this issue with Marrero again in March 2015.  (*Id.* at ¶¶ 17, 23).  Plaintiff stated that he applied for a disability accommodation on June 9, 2015, and received a partial accommodation from the DOE on June 19, 2015, the very day the DOE denied his Certificate of Completion of Probation.  (*Id.* at ¶¶ 28-31).

In his First Cause of Action under Article 78, Plaintiff claimed that his termination was done in bad faith and was "discriminatory in nature" insofar as he did not have a chance to perform his teaching role with the benefit of a disability accommodation despite advising the school of that disability in November 2014.  (Verified Pet. ¶¶ 34, 37).  Relatedly, Plaintiff alleged that he had been unable to get a new job as a teacher because he had been "problem coded" based on his termination.  (*Id.* at ¶ 33).

The Supreme Court's Order dismissing the Verified Petition expressly found that Plaintiff had failed to request a disability accommodation prior to

June 2015 and had not availed himself of the DOE's "offer[s] to work with [P]etitioner in an effort to help him improve." (Sup. Ct. Order 2-6). The Supreme Court held:

> In sum, there is no evidence that DOE acted in bad faith. DOE made [P]etitioner aware of its concerns throughout the school year in two disciplinary meetings and in two letters to file. Also, he was observed teaching on a number of occasions and reports of these observations were given to him. The School and its administrators also offered him assistance, which was declined. Thus, in other words, [P]etitioner was given sufficient notice of his deficiencies, and was unable or unwilling to correct them or request appropriate help in a timely fashion.

(*Id.* at 6-7). Justice Schlesinger also found no basis for Plaintiff's claim that he had been barred from future work at the DOE because of a designation in his file. (*Id.* at 7).

### a. Plaintiff's Disability Discrimination and Failure to Accommodate Claims Are Precluded

Plaintiff's disability discrimination claims raise the same allegations in this litigation as were raised in the Article 78 proceeding: Plaintiff alleges that he has dyslexia and that he informed his principal, Marrero, about his disability in November 2014, but that the DOE failed to accommodate his disability and discriminated against him when they terminated his employment based on that disability. (*Compare* Am. Compl., *with* Verified Petition). Plaintiff raises no suggestion in his opposition papers or in his pleadings that he did not have a full and fair opportunity to litigate those claims in the Supreme Court. And the issues that are central to Plaintiff's disability discrimination and failure to accommodate claims here — that his employer,

20

with knowledge of his disability, discriminated against him or failed to accommodate his needs[7] — were evaluated by the Supreme Court and were necessarily decided by the holding of no bad faith.

Accordingly, Plaintiff's discrimination and failure to accommodate claims under the ADA, the NYSHRL, and the NYCHRL are barred by collateral estoppel. *See, e.g.*, *DiLauria* v. *Town of Harrison*, 64 F. App'x 267, 270 (2d Cir. 2003) (summary order) (holding that ADA claims were barred by collateral estoppel where the plaintiff's Article 78 petition alleged discrimination on the basis of a disability, even though it did not seek relief under the ADA); *Lawtone-Bowles* v. *City of N.Y. Dep't of Sanitation*, 22 F. Supp. 3d 341, 348-49 (S.D.N.Y. 2014) (same); *Richardson* v. *City of N.Y.*, 97 Civ. 7676 (LAK), 2004 WL 325631, at *1 (S.D.N.Y. Feb. 20, 2004) ("[W]here an Article 78 petition seeks annulment of [an] employment disciplinary decision on the ground that it was discriminatory[,] … a determination by the state courts that the decision was supported by substantial evidence necessarily implies rejection of the claims

---

[7] For Plaintiff's ADA, Rehabilitation Act, and NYSHRL discrimination claims to survive a motion to dismiss, the pleadings would have to raise a minimal inference that Plaintiff was disabled but was otherwise qualified for his job with or without reasonable accommodation, and that he was terminated because of his disability. *Silver* v. *Entergy Nuclear Operations, Inc.*, No. 15 Civ. 1792 (CS), 2017 WL 5508387, at *10 (S.D.N.Y. Nov. 15, 2017); *Gorman* v. *Covidien, LLC*, 146 F. Supp. 3d 509, 527-28 (S.D.N.Y. 2015). Under the NYCHRL, Plaintiff's burden is lower: The Amended Complaint would only need to show that he had been treated less well at least in part for a discriminatory reason. *Gorman*, 146 F. Supp. 3d at 529-30.

Plaintiff's ADA, Rehabilitation Act, NYSHRL, and NYCHRL failure to accommodate claims each require a plausible showing that Plaintiff had a disability, that he could perform his job with a reasonable accommodation, and that his employer, with knowledge of his disability, refused to make such accommodations. *McMillan* v. *City of N.Y.*, 711 F.3d 120, 125 (2d Cir. 2013). Here, too, the showing under the NYCHRL is comparatively relaxed, as that statute provides for a broader range of accommodations so long as the accommodation "can be made" and does not impose an "undue hardship." N.Y. City Admin. Code § 8-102(18).

that the termination was discriminatory ... and thus forecloses a similar contention in a subsequent federal action." (internal quotation marks and alterations omitted)).[8]

### b. Plaintiff's Claim Under § 1983 Is Precluded

The Second Circuit has made clear that Article 78 proceedings do not bar subsequent § 1983 civil rights actions under principles of *res judicata* or collateral estoppel where (i) the plaintiff made no more than a fleeting reference to discrimination in his Article 78 petition and (ii) the issue of discrimination was neither considered nor rejected in holding that the plaintiff's termination was supported by substantial evidence. *Abdelal* v. *Kelly*, — F. App'x —, No. 17-1166, 2018 WL 992307, at *2-3 (2d Cir. Feb. 21, 2018) (summary order). Here, however, Plaintiff's Article 78 Verified Petition *did* assert that his termination and Defendants' failure to accommodate were discriminatory; the Supreme Court expressly considered these allegations and rejected them in dismissing Plaintiff's claims. This changes the analysis.

The Second Circuit has recognized that issue preclusion could bar a subsequent § 1983 action based on an earlier Article 78 action if the attendant issues were raised and litigated in the prior litigation. *McGuinn* v. *Smith*, 523 F. App'x 764, 766 (2d Cir. 2013) (summary order) ("As we have previously

---

[8]     Plaintiff's reliance on *Goonewardena* v. *New York State Workers' Compensation Board* is misplaced. No. 09 Civ. 8244 (RA)(HBP), 2016 WL 7439414 (S.D.N.Y. Feb. 9, 2016), *report and recommendation adopted*, 2016 WL 7441695 (S.D.N.Y. Dec. 22, 2016). The plaintiff in *Goonewardena* brought an Article 78 proceeding to challenge his termination, but he did not allege that his termination was based on racial discrimination. For that reason, the court held that his Title VII and § 1983 discrimination claims were not barred by collateral estoppel. 2016 WL 7439414, at *8.

observed, issue preclusion may bar consideration in § 1983 cases of an issue that was previously decided in Article 78 proceedings, provided that the plaintiff raised the issue and the issue was 'actually and necessarily' decided by the state court." (quoting *Vargas* v. *City of N.Y.*, 377 F.3d 200, 205-06 (2d Cir. 2004))).

Plaintiff does not explain the basis for his § 1983 claim, and it bears noting that the § 1983 statute does not, by itself, confer any affirmative rights. Assuming that Plaintiff seeks to attack his termination as violative of § 1981's proscription on intentional discrimination in employment, that claim hinges on whether Defendants acted with a discriminatory purpose, *see Ruiz* v. *Cty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010), and this issue has already been decided and rejected by the state court. In any event, Plaintiff's disability discrimination claim under § 1983 fails for the additional reason that "freedom from discrimination on the basis of disability is a right secured by [the ADA], not by the Constitution," and thus "the law in this Circuit is clear that a § 1983 action may not be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement." *Fierro* v. *N.Y. City Dep't of Educ.*, 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014) (internal quotation marks and alterations omitted) (quoting *Patterson* v. *Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004)).

### c.    Plaintiff's Retaliation Claims Are Not Precluded

In Plaintiff's Article 78 proceeding, he claimed that the DOE retaliated against him for being disabled by giving him negative performance reviews and

disciplining him. (Verified Pet. ¶ 3). Plaintiff also alleged that the DOE added a negative notation in his personnel file that, he believed, prevented him from obtaining later employment at DOE. (*Id.* at ¶ 33). The Supreme Court considered these allegations and rejected them. (Sup. Ct. Order 6-7 (finding that negative reviews and discipline were based on inability to interact with students and weaknesses in his teaching); *id.* at 7 ("[A]ny conclusion that [P]etitioner was 'barred' from re-employment with DOE is speculative and unsupported by any evidence.")).

The Amended Complaint raises a different retaliation claim, one that was not considered or decided by the Supreme Court. Here, Plaintiff alleges that Defendants retaliated against him by "firing [him] after [he] requested [a] reasonable accommodation[.]" (Am. Compl. ¶¶ 32-33).[9] While Plaintiff's Verified Petition alleged that his termination was in bad faith, it did not — save for a passing reference — say it was retaliatory based on his request for an accommodation. Because the Supreme Court was not presented with this allegation and did not expressly decide it, the Court cannot find the identity of issues needed for collateral estoppel to bar this claim.

The Second Circuit has held that a state court's affirmance of an employee's termination in an Article 78 proceeding does not, on its own,

---

[9]     Plaintiff also alleges that Defendants retaliated against him by disciplining him for speaking freely about the incident with a student's IEP and by putting a negative remark in his personnel file and that this has prevented him from gaining new employment at DOE. As noted above, these particular retaliation allegations were raised and considered by the Supreme Court, which rejected them. Accordingly, Plaintiff's retaliation claim cannot stand on either theory.

preclude all attacks to that termination that sound in discrimination where those issues were not raised in the state court. In *Vargas* v. *City of New York*, the Second Circuit vacated a district court's dismissal of an equal protection claim on the theory that the state court upheld the employee's termination as supported by substantial evidence, and this "necessarily subsume[d] the question of whether it was made with discriminatory intent." 377 F.3d 200, 206 (2d Cir. 2004) (citation omitted). The Court held that a state court ruling upholding a termination under Article 78 "does not demonstrate that the court 'actually and necessarily' decided an issue that was never presented to it, even if that issue touched, in a general sense, on the propriety of the termination." *Id.* Here, the Supreme Court was presented with Plaintiff's claim that his termination was discriminatory, and it squarely rejected it in a written opinion. But the Supreme Court was *not* presented with the claim that Plaintiff's termination was exacted in retaliation for requesting an accommodation. Accordingly, the Court holds that this claim is not precluded by the Article 78 ruling and may proceed.

**F.     Plaintiff Fails to State a Retaliation Claim**[10]

To state a claim for retaliation under the ADA, the Rehabilitation Act, or the NYSHRL, Plaintiff's pleading must plausibly suggest that: "[i] []he engaged

---

[10]     Because there is no individual liability for retaliation claims under the ADA or the Rehabilitation Act, this claim necessarily fails against municipal employees Fariña, Mashel, and Marrero. *Spiegel* v. *Schulmann*, 604. F.3d 72, 79 (2d Cir. 2010). *But cf. Henrietta D.* v. *Bloomberg*, 331 F.3d 261, 287 (2d Cir. 2003) (finding individual liability for a state officer but clarifying that "we have no occasion to decide whether the Rehabilitation Act (and therefore the ADA) imposes similar supervisory duties on … non-state individuals or entities"). Moreover, Plaintiff may not raise a claim of retaliation based on his disability under § 1983 for the reasons stated above.

in protected activity, [ii] the employer was aware of this activity, [iii] []he was subjected to an adverse employment action against [him], and [iv] a causal connection existed between the alleged adverse employment action and [his] protected activity." *McGuire-Welch* v. *House of the Good Shepherd*, — F. App'x —, 2018 WL 443487, at *3 (2d Cir. Jan. 17, 2018) (summary order) (citing *Weixel* v. *Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)).[11] An adverse employment action is defined as one that is "materially adverse with respect to the terms and conditions of employment" such as termination. *Flieger* v. *Eastern Suffolk BOCES*, 693 F. App'x 14, 17 (2d Cir. 2017) (summary order) (quoting *Davis* v. *N.Y. City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015)). Protected activities include requests for reasonable accommodations. *Id.* at 18. Causation can be shown through indirect proof "that the protected activity was closely followed in time by adverse action." *Clark* v. *Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). To plead retaliation under the NYCHRL, Plaintiff must show that he "took an action opposing [his] employer's

---

[11]     Defendants claim that Plaintiff cannot state a claim under the Rehabilitation Act because he failed to allege that the DOE receives federal funding, as required for recovery under that statue. (Def. Reply 8). Defendants are correct that one of the subtle differences between the Rehabilitation Act and the ADA is that the former only covers entities that are federally-funded. *See Quadir* v. *N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 538 (S.D.N.Y. 2014). But Defendants do not say that the DOE is not federally-funded (and there is no evidence presented to the Court in the papers it may consider that speak to this issue); Defendants simply argue that Plaintiff has not alleged the fact of federal funding. (Def. Reply 8). Plaintiff proceeds *pro se* and the Court is reluctant to discard his claim for a failure to plead a technical requirement of the statute. Defendants also argue that Plaintiff fails to allege that discrimination was the sole basis for his termination, as he must under the Rehabilitation Act. (Def. Reply 8-9). *Quadir*, 39 F. Supp. 3d at 538. This argument has more traction, but, as the Court explains below, Plaintiff will be granted leave to amend to cure, if he can, these pleading deficiencies.

discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action[.]" *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (citations omitted).

Plaintiff's request for an accommodation was protected activity of which the DOE was aware. (*See* Def. Br. 19). The Amended Complaint alleges that Plaintiff filed a request for an accommodation on June 9, 2015, and his accommodation was partially approved on June 19, 2015, the very same day he was given notice of his impending termination. (Am. Compl. ¶¶ 25, 28-29). While Plaintiff's termination followed closely on the heels of his accommodation request, the allegation of a causal connection is belied by the fact that his accommodation request was approved by the DOE — it would be a curious means of retaliation to look approvingly upon protected activity while simultaneously punishing Plaintiff for the same conduct. Thus, on the facts as alleged in the Amended Complaint, Plaintiff's retaliation claim is not sufficiently plausible to survive the instant motion to dismiss.

The Amended Complaint also fails to plead a retaliation claim against Marrero. Both the NYSHRL and the NYCHRL permit individual liability. The NYSHRL permits liability for employers who are supervisors with authority to hire and fire employees, while the NYCHRL permits liability for an employer's employee or agent. *Malena* v. *Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 365-66 (S.D.N.Y. 2012). For liability to attach, a plaintiff must show that the individual "actually participated in the conduct giving rise to the

discrimination." *Feingold* v. *New York*, 366 F.3d 138, 157 (2d Cir. 2004)

(internal quotation marks and alterations omitted). The Amended Complaint

does not plausibly suggest that Marrero participated in the decision to

terminate him. Plaintiff received a letter from Superintendent Mashel that he

was being terminated. Though Marrero was involved in Plaintiff's discipline

and performance reviews, there is no indication from the face of the pleading

that Marrero played a role in the decision to terminate Plaintiff or had the

authority to do so. Accordingly, Plaintiff's NYSHRL and NYCHRL claims

against Marrero fail.

### G.      Plaintiff Will Be Given Leave to Replead

In his opposition brief, Plaintiff alleges that Defendants were aware of his

disability *and* his requests for reasonable accommodations "as early as

November 2014 — well before [his] termination letter on June 19, 2015." (Pl.

Opp. 2).[12] He adds that he obtained documents that corroborate this allegation

from a Freedom of Information Law ("FOIL") request, and that "[d]ocumentation

for this claim can be provided at a pre-motion hearing." (Pl. Opp. 2, n.2). This

latter statement suggests some confusion on Plaintiff's part: The Court held a

pre-motion conference with the parties on May 11, 2017. There, Plaintiff

mentioned that he had received documents from a FOIL request, but he did not

attach any of them to his Amended Complaint; the Court, having not seen the

documents, cannot assess whether Plaintiff is in possession of additional

---

[12]     In the Amended Complaint, Plaintiff only alleges that he informed Defendants about his disability, not that he requested an accommodation, in November 2014. (Am. Compl. ¶ 10).

information that may bolster his retaliation allegations.[13]  Plaintiff also states that he "may identify and provide additional arguments during motion practice in response to [D]efendants['] arguments," suggesting again that he may have more information to bring to bear.  (Pl. Opp. 1 n.1).

Given Plaintiff's *pro se* status and the commands of Federal Rule of Civil Procedure 15, the Court will grant Plaintiff leave to amend his retaliation claim under the ADA and the Rehabilitation Act against the DOE.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Plaintiff may also amend his NYSHRL and NYCHRL claims against Marrero. Plaintiff may not amend his other claims as the Court finds that amendment would be futile in light of (i) Plaintiff's failure to file a notice of claim and (ii) the preclusive effect of the Article 78 proceeding.  *See Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming denial of motion to amend *pro se* complaint where complaint's deficiencies were "substantive" and thus repleading was futile).  Plaintiff should carefully consider this Opinion as he drafts his second amended complaint and he is reminded that he may contact the New York Legal Assistance Group's clinic for *pro se* litigants in this District for assistance.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED but Plaintiff is granted leave to amend his ADA and Rehabilitation Act

---

[13]     Paragraph 11 of the Amended Complaint indicates that Plaintiff intended to attach a document to his pleading, but none was attached.

retaliation claims against the DOE and his NYSHRL and NYCHRL retaliation claims against Marrero. Plaintiff must file his Amended Complaint by May 1, 2018. The Clerk of Court is directed to terminate the motion at Docket Entry 28.

SO ORDERED.

Dated:     March 22, 2018
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge