UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADAM THOMAS WARMIN,

                    Plaintiff,

          -v.-

NEW YORK CITY DEPARTMENT OF
EDUCATION, CARMEN FARIÑA,
MELODIE MASHEL, and ALEXIS
MARRERO,

                    Defendants.

16 Civ. 8044 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:[1]

Plaintiff Adam Warmin worked as a special education teacher for the New York City Department of Education (the "DOE") from 2012 until his termination in 2015. After his termination, Plaintiff brought this *pro se* lawsuit against the DOE, Principal Alexis Marrero, Superintendent Melodie Mashel, and former New York City Schools Chancellor Carmen Fariña[2] (together with Marrero, Mashel, and the DOE, "Defendants"), alleging that they had failed to accommodate his dyslexia, discriminated against him, retaliated against him, and ultimately terminated his employment unlawfully. The Court dismissed Plaintiff's First Amended Complaint (the "FAC") on March 22, 2018, after concluding that each claim was either precluded by an earlier Article 78

---

[1]     Holly Highfill, a rising second-year student at the University of Chicago Law School and an intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

[2]     If this case were to continue against Defendant Carmen Fariña, the current DOE Chancellor, Richard A. Carranza, would have been substituted for her. *See* Fed. R. Civ. P. 25(d) (providing for automatic substitution of public officer with successor).

proceeding Plaintiff brought in New York State Supreme Court or insufficiently pleaded. The Court granted Plaintiff leave to amend his pleadings, but specified that this leave was limited to claims of retaliation brought against the DOE and Marrero.

Plaintiff subsequently filed his Second Amended Complaint (the "SAC"), bringing claims of discrimination, retaliation, and failure to accommodate against Defendants. Defendants have again moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court resolves the motion as follows: As a preliminary matter, the Court only considers Plaintiff's retaliation claims against the DOE and Marrero, because the other claims were previously dismissed without leave to replead and are thus not properly before the Court. Three of Plaintiff's retaliation claims — two against the DOE and one against Marrero — survive the motion to dismiss. Plaintiff's remaining claims are dismissed with prejudice.

## BACKGROUND[3]

### A. Factual Background

The Court has previously detailed the relevant facts and procedural posture of this case in the course of resolving the motion to dismiss Plaintiff's

---

[3] This Opinion draws facts from those outlined in the Court's Opinion and Order filed on March 22, 2018, *Warmin* v. *N.Y.C. Dep't of Educ.*, No. 16 Civ. 8044 (KPF), 2018 WL 1441382 (S.D.N.Y. Mar. 22, 2018), and from Plaintiff's SAC (Dkt. #46). The well-pleaded allegations of Plaintiff's SAC are assumed to be true for purposes of the instant motion. *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam). Pursuant to Federal Rule of Evidence 201, the Court also takes judicial notice of (i) the Verified Petition filed in *Warmin* v. *City of New York*, Index No. 102211/15, ("Verified Pet."), which is attached as Exhibit 1 to the Branch Declaration in Support of Defendants' Motion to Dismiss the Amended Complaint (Dkt. #29 ("Branch Decl."), 29-1 to 29-7), and (ii) Justice Alice Schlesinger's October 27, 2016 Order dismissing

FAC.  *Warmin* v. *N.Y.C. Dep't of Educ.*, No. 16 Civ. 8044 (KPF), 2018 WL 1441382 (S.D.N.Y. Mar. 22, 2018) ("*Warmin I*").  It therefore mentions here only what is necessary to resolve the instant motion.

In short, Plaintiff was diagnosed with dyslexia in 1994, a condition that caused him "difficulty [with] reading and writing." (SAC ¶ 1).  Plaintiff worked as a teacher for special education students at Intermediate School ("I.S.") 254 in the Bronx from October 2012 to August 2015.  (*Id.* at ¶¶ 2-3).  According to Plaintiff, it was during a meeting in November 2014 that he first told Principal Marrero that he (Plaintiff) suffered from dyslexia.  (*Id.* at ¶¶ 9-10).  In April 2015, Marrero advised Plaintiff to seek accommodations from the DOE concerning his disability.  (*Id.* at ¶ 22).  On June 9, 2015, Plaintiff submitted a disability accommodation request that asked for "extra time to complete written tasks, a scanner and a screen reader to read documents back, a word processor, a printer and an individual to help [him] proofread important and sensitive documents." (*Id.* at ¶ 26).

Two significant events took place on June 19, 2015.  *First*, Plaintiff received partial approval of his accommodation request — the DOE granted him extended time to complete written work. (SAC ¶ 29).  *Second*, and more

---

Plaintiff's claims in the state case, which is attached as Exhibit 5 to the Branch Decl. (Dkt. #29-11 ("Sup. Ct. Order")).

For convenience, the Court refers to Defendants' Memorandum of Law in Support of the Motion to Dismiss as "Def. Br." (Dkt. #55), Plaintiff's Letter in Opposition to Defendants' Motion to Dismiss as "Pl. Opp." (Dkt. #56), and Defendants' Reply Memorandum of Law in Further Support of the Motion to Dismiss as "Def. Reply" (Dkt. #58).

critically, Plaintiff received a notice from Superintendent Mashel that his employment at I.S. 254 would be terminated.  (*Id.* at ¶ 30).

In September 2016, Plaintiff received a new job offer to serve as a "Special Education Math teacher" for grades 7 and 8 at Public School ("P.S.") 46 in District 5.  (SAC ¶ 41).  Plaintiff was required to have employment paperwork completed by the DOE's Office of Special Investigations within 30 days, or his employment offer would be rescinded.  (*Id.*).  As it happened, the Office of Special Investigations failed to complete Plaintiff's employment paperwork within the required 30-day time frame, and as a result, "the principal of P.S. 46 [had] to rescind her nomination" of employment after Plaintiff had already worked at the school for three weeks.  (*Id.*).

## B.    Procedural Background

### 1.    Plaintiff's State and Federal Pleadings

On December 18, 2015, Plaintiff filed a Verified Petition under Article 78, N.Y. C.P.L.R. § 7804, in New York State Supreme Court, New York County, against the City of New York, the DOE, and then-Chancellor Fariña seeking to "challenge, reverse, and annul [the DOE's] arbitrary and capricious, wrongful, discriminatory[,] and bad faith termination/denial of completion of probation of Petitioner's probationary employment[.]"  (Verified Pet. ¶ 1).  The allegations therein largely track those in Plaintiff's FAC.  The Supreme Court dismissed the Verified Petition with prejudice on October 27, 2016.  (Sup. Ct. Order 7).

Plaintiff initiated this action during the pendency of his Article 78 proceeding, on October 11, 2016.  (Dkt. #2).  Following an unsuccessful

mediation, Defendants sought leave to file a motion to dismiss.  (Dkt. #20).

The Court held a pre-motion conference with the parties on May 11, 2017,

during which it afforded Plaintiff an opportunity to amend his complaint and

set a schedule for briefing on Defendants' motion.  (Dkt. #24).  Plaintiff filed his

FAC on June 15, 2017.  (Dkt. #25).  Defendants filed their motion to dismiss on

July 27, 2017.  (Dkt. #28-30).  Plaintiff filed a letter response to Defendants'

motion on September 14, 2017.  (Dkt. #32).  Defendants filed a reply brief in

support of their motion on September 30, 2017.  (Dkt. #33).

### 2.    The Court's Resolution of Defendants' Motion to Dismiss the FAC

In the FAC, Plaintiff advanced the following claims as to all Defendants:

(i) discrimination and retaliation under the Americans with Disabilities Act of

1990 (the "ADA"), 29 U.S.C. §§ 621-634, the Rehabilitation Act of 1973, 29

U.S.C. §§ 794, and 42 U.S.C. § 1983; (ii) failure to accommodate under the

ADA; and (iii) discrimination, retaliation, and failure to accommodate under the

New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290-297,

and the New York City Human Rights Law (the "NYCHRL"), N.Y. City Admin.

Code §§ 8-101 to 8-131.  (*See generally* FAC).  Ultimately, the Court found that

each of Plaintiff's discrimination and failure to accommodate claims was

precluded under the doctrine of collateral estoppel, because the issues

underlying each had been raised and rejected in Plaintiff's Article 78

proceeding.  *Warmin I*, 2018 WL 1441382, at *7-10.  Plaintiff's NYSHRL and

NYCHRL claims against the DOE, Fariña, and Mashel were dismissed for

failure to comply with the New York Education Law.  *Id.* at *6-7.

5

The Court found, however, that certain of Plaintiff's retaliation claims were not obviously precluded by the Article 78 proceeding. *Warmin I*, 2018 WL 1441382, at *10-11. For example, Plaintiff alleged that he had been terminated in retaliation for requesting an accommodation, a claim that the state court had not addressed. *Id.* These retaliation claims were dismissed, however, because Plaintiff had failed to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* at *11-12. Plaintiff was granted leave to amend his pleadings, but, critically, the leave to amend was limited to (i) his ADA and Rehabilitation Act retaliation claims against the DOE and (ii) his NYSHRL and NYCHRL retaliation claims against Marrero. *Id.* at *12. The Court required that Plaintiff file a second amended complaint by May 1, 2018. *Id.* at *13.

### 3. Plaintiff's SAC and the Instant Motion to Dismiss

After granting Plaintiff several extensions of time to file a second amended complaint, the Court set a final deadline of October 31, 2018. (Dkt. #39-45). Plaintiff filed the SAC on October 31, 2018. (Dkt. #46). Defendants filed a motion to dismiss the SAC on February 1, 2019. (Dkt. #53). Plaintiff filed an opposition letter on March 8, 2019. (Dkt. #56). Defendants filed their reply brief on March 29, 2019. (Dkt. #58).

### DISCUSSION

### A. Plaintiff's Claims in the SAC

Plaintiff's SAC again alleges (i) discrimination and retaliation under the ADA as to all Defendants; (ii) failure to accommodate under the ADA as to all Defendants; and (iii) discrimination, retaliation, and failure to accommodate

under the NYSHRL and the NYCHRL as to all Defendants. (*See generally* SAC).[4] But, as noted, Plaintiff had only been granted leave to replead his ADA and Rehabilitation Act retaliation claims against the DOE and his NYSHRL and his NYCHRL retaliation claims against Marrero. *See Warmin I*, 2018 WL 1441382, at *13. Because the other claims asserted in the SAC were dismissed without leave to replead in *Warmin I*, the Court does not address them again here. *Id.*

Conversely, Plaintiff does not specifically assert a claim of retaliation under the Rehabilitation Act, as he had in the FAC. However, the SAC does contain facts and legal arguments that can be construed to assert a Rehabilitation Act claim, which Plaintiff was granted leave to replead. *Warmin I*, 2018 WL 1441382, at *13. Because Plaintiff is proceeding *pro se*, the Court will liberally construe Plaintiff's submissions to include a Rehabilitation Act claim of retaliation against the DOE. *See McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156-58 (2d Cir. 2017).

In their current motion to dismiss, Defendants argue that each of Plaintiff's claims in the SAC should be dismissed. (*See generally* Def. Br.). But in his opposition letter, Plaintiff responded to only some of these arguments

---

[4]    In his letter opposing Defendants' motion to dismiss, Plaintiff raises an additional claim for breach of contract, asserting that Defendants had violated a United Federation of Teachers ("UFT") contract. (*See* Pl. Opp. 1-2). This claim had not been asserted in Plaintiff's SAC. Nor had the Court granted Plaintiff leave to replead to include a new breach of contract claim. "Although district courts sometimes consider new factual allegations made in a *pro se* plaintiff's opposition briefs where they are consistent with those in the complaint … they do not consider entirely new claims." *Mira* v. *Argus Media*, No. 15 Civ. 9990 (RJS), 2017 WL 1184302, at *3 n.4 (S.D.N.Y. Mar. 29, 2017). Because the breach of contract claim was raised only in Plaintiff's opposition papers, the Court declines to consider it here.

and failed to explain why certain other of his claims should survive. (*See generally* Pl. Opp.). As Defendants argue, a failure to respond to an argument on a point of issue may constitute abandonment of that issue. (*See* Def. Reply 5-6). *See Anti-Monopoly, Inc.* v. *Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997), *aff'd*, 130 F.3d 1101 (2d Cir. 1997) (per curiam); *cf. Jackson* v. *Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) ("Pleadings often are designed to include all possible claims or defenses, and parties are always free to abandon some of them."). However, in recognition of the special solicitude owed a *pro se* plaintiff, the Court finds that none of Plaintiff's claims was abandoned and the Court will consider each of the properly repleaded claims in the SAC.

Viewing these claims in the light most favorable to Plaintiff, the Court thus construes the SAC to state five separate claims of retaliation: (i) the DOE retaliated against Plaintiff on account of his disability by giving him negative performance reviews and disciplining him; (ii) the DOE retaliated against Plaintiff on account of his disability by adding a negative notation to Plaintiff's personnel file that may have prevented him from obtaining later employment at the DOE; (iii) the DOE retaliated against Plaintiff's request for accommodation by terminating Plaintiff; (iv) the DOE retaliated against Plaintiff's request for accommodation by delaying paperwork needed to finalize Plaintiff's appointment at P.S. 46, causing him to lose the job; and (v) Defendant Marrero retaliated against Plaintiff's request for accommodation by terminating Plaintiff. In line with the Court's decision in *Warmin I*, Plaintiff's claims against the DOE

are brought under the ADA and the Rehabilitation Act, while his claims against Marrero are brought under the NYSHRL and the NYCHRL.

## B. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), a district court must "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 548 F.3d 82, 88 (2d Cir. 2009)). Though Rule 8 "does not require detailed factual allegations, … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff will be entitled to relief if he alleges "enough facts to state a claim to relieve that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). The Court is not bound to accept conclusory allegations or legal arguments couched as factual conclusions. *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

Where a plaintiff proceeds *pro se*, a court will review his pleadings "liberally and 'interpret them to raise the strongest arguments that they

suggest.'" *Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). That said, the Court will not "read into *pro se* submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest[.]" *Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citations omitted). In this regard, a *pro se* litigant is "not exempt ... from compliance with relevant rules of procedural and substantive law[.]" *Id.* (quoting *Traguth* v. *Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## C. Two of Plaintiff's Retaliation Claims Against the DOE Are Precluded by the Article 78 Proceeding

Defendants argue that two of Plaintiff's current retaliation claims against the DOE are in fact precluded by the Article 78 proceeding — namely, Plaintiff's claims that the DOE retaliated against him on account of his disability by (i) giving him negative performance reviews and disciplining him; and (ii) including a negative notation in his personnel file that prevented him from obtaining later employment at the DOE. (*See* Def. Br. 15, 18). As set forth below, the Court agrees.

### 1. Applicable Law

Under New York law, collateral estoppel bars relitigation of an issue that is "[i] identical to an issue already decided [ii] in a previous proceeding in which that party had a full and fair opportunity to litigate, and where [iii] the issue that was raised previously is decisive of the present action." *Indus. Risk Insurers* v. *Port Auth. of N.Y. and N.J.*, 493 F.3d 283, 287-88 (2d Cir. 2007)

(quoting *Curry* v. *City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (internal quotation marks and alteration omitted)).  Where these elements are met, "issue preclusion is applicable even if the two suits are not based on the same cause of action." *Proctor* v. *LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013).  The party asserting preclusion — here, Defendants — bears the burden of showing that the identical issue was necessarily decided, while Plaintiff bears the burden of showing he lacked a full and fair opportunity to litigate the issue in the prior forum.  *Id.*  Mutual collateral estoppel may apply here because the DOE was a party to the Article 78 proceeding.

### 2.  Analysis

As stated in *Warmin I*, the New York State Supreme Court previously rejected Plaintiff's claims that the DOE retaliated against his disability by (i) giving negative performance reviews and disciplining him, and (ii) including a negative notation in his personnel file that prevented him from obtaining later employment at the DOE.  *See* 2018 WL 1441383, at *10.  Accordingly, those claims are precluded here under the doctrine of collateral estoppel.  *See id.* at *7-8.[5]

---

[5]  Subsequent to *Warmin I*, the Court issued a decision in *Martin* v. *City University of New York*, in which it determined that there was insufficient information in the record to conclude that the *pro se* plaintiff had a full and fair opportunity to litigate his claims in the state court proceedings.  No. 17 Civ. 6791 (KPF), 2018 WL 6510805, at *6-7 (S.D.N.Y. Dec. 11, 2018).  When considering whether claims were fully and fairly litigated in a previous proceeding, courts look to "a variety of non-dispositive factors … and consider 'the various elements which make up the realities of litigation.'"  *Id.* at *6 (quoting *Lloyd* v. *N.Y. Botanical Garden*, No. 03 Civ. 7557 (BSJ), 2004 WL 2093468, at *3 (S.D.N.Y. Sept. 17, 2004)).  In *Martin*, this Court considered the following factors in determining that the plaintiff did not have a full and fair opportunity to litigate: (i) the plaintiff's *pro se* status; (ii) evidence indicating the exchange of discovery, witness interviews, or hearings; and (iii) whether the plaintiff had the opportunity to file

Plaintiff, for his part, argues that collateral estoppel should not apply, because his Article 78 proceeding was tainted by a perjurious statement from Defendant Marrero.[6]  According to Plaintiff, during the state court proceeding, Marrero testified that he did not know about Plaintiff's disability until March 3, 2015.  (SAC, Ex. I).  Plaintiff claims this was a lie and submits a document he received from a Freedom of Information Law ("FOIL") request to support his allegation.  The document, which appears to have been written by Marrero, bears a date of November 11, 2014, and notes that Plaintiff was dyslexic.  (SAC, Ex. D).  Plaintiff argues that this evidence proves that Marrero perjured himself in the Article 78 proceeding by misstating when he became aware of Plaintiff's dyslexia.  Had the New York State Supreme Court known the truth, Plaintiff says, it would not have rejected his claim.  Because of this, Plaintiff claims the

extensive briefs in which he sufficiently framed his allegations in the context of the applicable law.  *Id.* at *6-7.

In the instant case, the record is sufficient to determine that Plaintiff had a full and fair opportunity to litigate.  (Dkt. #29-1 to 29-6).  Plaintiff filed an extensive Article 78 petition in which he outlined the facts, causes of action, and relevant case law underlying his claims.  (*Id.*).  Further, the record indicates that Plaintiff had access to and submitted the following documentation to the state court: his performance evaluations, excerpts from the UFT contract, internal DOE documents and memos, letters sent to Plaintiff from Principal Marrero regarding his alleged misconduct, and medical records outlining Plaintiff's disability.  (*Id.*).  In turn, the New York State Supreme Court addressed Plaintiff's claims and accompanying evidentiary support and issued a thoughtful opinion that fully analyzed, and ultimately dismissed, Plaintiff's claims.  (*See* Sup. Ct. Order).  Having examined the claims and proceedings in this case and compared them to those in *Martin*, the Court adheres to its prior decision that Plaintiff had a full and fair opportunity to litigate his claims in the Article 78 proceeding and that those claims previously addressed in state court are still precluded here.

[6]  Plaintiff includes among his allegations against Marrero a section labeled "Perjury."  (SAC § D).  To the extent Plaintiff seeks to assert a claim of perjury against Marrero, perjury is a crime "and therefore do[es] not give rise to civil causes of action."  *Luckett* v. *Bure*, 290 F.3d 493, 497 (2d Cir. 2002).

Article 78 proceeding was tainted and should not have preclusive effect in this litigation.  (SAC §§ A, D).

Generally, "[u]nder the doctrine of *res judicata* [(claim preclusion)], '[a] final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action.'" *Saud* v. *Bank of N.Y.*, 929 F.2d 916, 918 (2d Cir. 1991) (quoting *Federated Dep't Stores, Inc.* v. *Moitie*, 452 U.S. 394, 398 (1981)).  While "newly discovered evidence does not preclude the application of *res judicata* … [e]xceptions to this rule exist when the evidence was either fraudulently concealed or when it could not have been discovered with due diligence."  *Saud,* 929 F.2d at 920.

Here, however, Plaintiff makes no allegations that the document he attained through the FOIL request was fraudulently concealed in the Article 78 proceeding.  In other words, Plaintiff could have discovered this document had he filed a similar FOIL request when researching his state court complaint. *See Joint Apprenticeship & Training Council of Local 363* v. *N.Y.S. Dep't of Labor*, 842 F. Supp. 1561, 1565-65 (S.D.N.Y. 1994) (finding *res judicata* applied because new facts could have been discovered with reasonable diligence).

More fundamentally, even if this document had been fraudulently concealed and was thus incapable of discovery with reasonable diligence, it would have no impact on the preclusive effect of the Article 78 proceeding.  The New York Supreme Court accepted as true Plaintiff's allegation that Marrero knew about his dyslexia in November 2014, despite Marrero's testimony to the contrary.  (*See* Sup. Ct. Order 2).  Thus, while Exhibit D is new in the sense

13

that Plaintiff did not include it as an attachment in any previous pleadings, the facts contained within the document are not new, and were assumed to be true when Plaintiff's claims were adjudicated in state court. (*See id.*). Accordingly, Plaintiff's claims that the DOE retaliated against him by giving him negative performance reviews and adding a negative notation in his personnel file are precluded.

**D.** **Plaintiff's Remaining Retaliation Claims Survive the Motion to Dismiss**

Plaintiff's remaining claims in the SAC are brought against the DOE, under the ADA and Rehabilitation Act, and against Marrero, under the NYSHRL and the NYCHRL. Plaintiff alleges that the DOE and Marrero retaliated against him for seeking a reasonable accommodation for his disability. These claims are substantively different from the retaliation claims asserted in Plaintiff's Article 78 proceeding, which dealt with retaliation against Plaintiff for being disabled. *See Warmin I*, 2018 WL 1441382, at *10. "Because the Supreme Court was not presented with this allegation and did not expressly decide it, the Court cannot find the identity of issues needed for collateral estoppel to bar this claim." *Id.* As a result, the Court proceeds to consider the adequacy of Plaintiff's pleading under Rule 12(b)(6).

**1.** **Applicable Law**

To state a claim for retaliation under the ADA, the Rehabilitation Act, or the NYSHRL, Plaintiff's pleading must plausibly suggest that: "[i][]he engaged in protected activity, [ii] the employer was aware of this activity, [iii] []he was subjected to an adverse employment action, and [iv] a causal connection

existed between the alleged adverse employment action and [his] protected activity." *McGuire-Welch* v. *House of the Good Shepherd*, 720 F. App'x 58, 62 (2d Cir. 2018) (summary order) (citing *Weixel* v. *Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)). An adverse employment action is defined as one that is "materially adverse with respect to the terms and conditions of employment," such as termination. *Flieger* v. *E. Suffolk BOCES*, 693 F. App'x 14, 17 (2d Cir. 2017) (summary order) (quoting *Davis* v. *N.Y. City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015)). Protected activities include requests for reasonable accommodations. *Flieger*, 693 F. App'x at 18. Causation can be shown through indirect proof "that the protected activity was closely followed in time by adverse action." *Clark* v. *Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015) (quoting *Cifra* v. *Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001)). To plead retaliation under the NYCHRL, Plaintiff must show that he "took an action opposing [his] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action[.]" *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (citations omitted).

Both the NYSHRL and the NYCHRL permit individual liability. The NYSHRL permits liability for employers who are supervisors with authority to hire and fire employees, while the NYCHRL permits liability for an employer's employee or agent. *Malena* v. *Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 365-67 (S.D.N.Y. 2012). For liability to attach, a plaintiff must show that the individual "actually participate[d] in the conduct giving rise to the

discrimination." *Feingold* v. *New York*, 366 F.3d 138, 157 (2d Cir. 2004) (internal quotation marks and alterations omitted).

"[A]t the pleading stage" for a claim for retaliation, "a plaintiff must only meet the standard set forth in Fed. R. Civ. P. 8(a), which requires a short and plain statement of the claim showing that the pleader is entitled to relief .... Under this standard, [g]iven the Federal Rules' simplified standard for pleading, [a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Williams* v. *N.Y.C. Hous. Auth.*, 458 F.3d 67, 71-72 (2d Cir. 2006) (citing *Swierkiewicz* v. *Sorema,* 534 U.S. 506, 512 (2002)); *see generally Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).

## 2. Plaintiff's Claims That the DOE and Marrero Terminated Him in Retaliation for His Request for Reasonable Accommodation Survives the Motion to Dismiss

Plaintiff brings two identical retaliation claims against the DOE and Marrero: Plaintiff alleges Marrero and the DOE terminated his position in retaliation for his request for reasonable accommodation. According to the SAC, Marrero told Plaintiff to file a request for a reasonable accommodation for his disability in April 2015. (SAC ¶ 22). Plaintiff filed his accommodation request with the DOE on June 9, 2015, and his accommodation was partially approved on June 19, 2015 — the same day he was given notice of his impending termination. (*Id.* at ¶¶ 29-30). Plaintiff claims that the fact that the DOE partially approved his accommodation request and then subsequently terminated him establishes a causal connection between the two actions; the

DOE and Marrero must have terminated Plaintiff's employment in response to the grant of partial accommodation.

In *Warmin I*, the Court dismissed substantially similar claims against the DOE and Marrero. There, the Court concluded that Plaintiff's FAC had failed to allege that Marrero was involved in the decision to terminate Plaintiff. *See* 2018 WL 1441382, at *12. Furthermore, Plaintiff had failed to establish that a "causal connection" existed between the request for reasonable accommodation and the DOE's adverse employment action. *See id.* Specifically, the Court found that the FAC had failed to allege adequately that the DOE was retaliating because of the accommodation request, which it had just granted, when it terminated Plaintiff. *Id.*

Plaintiff has rectified both deficiencies in the SAC. The SAC includes a new document, Exhibit H, that is an "Executive Reference Check" that Plaintiff claims was completed by Principal Marrero on October 12, 2015, four months after Plaintiff was terminated. (SAC, Ex. H). When answering "what was [Plaintiff's] reason for leaving," Principal Marrero allegedly wrote, "His tenure was denied." (*Id.*). And when answering why Plaintiff's tenure was denied, Principal Marrero wrote, "I didn't see enough evidence of progress." (*Id.*).

This document allows Plaintiff to suggest plausibly that Principal Marrero participated in DOE's decision to terminate Plaintiff's employment. And Plaintiff has sufficiently alleged that the other elements of retaliation are met as to Marrero. Plaintiff's request for reasonable accommodation was a protected activity, *Flieger*, 693 F. App'x at 18, which Marrero knew about.

17

(SAC ¶¶ 22, 27). Plaintiff was subjected to an adverse employment action when he was terminated. *Flieger*, 693 F. App'x at 17. And the close temporal proximity between the request for reasonable accommodation (June 9, 2015) and Plaintiff's termination (June 19, 2015), creates an inference of causal connection that is sufficient to survive a motion to dismiss. *See Quinn* v. *Green Tree Credit Corp.,* 159 F.3d 759, 770 (2d Cir. 1998), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101 (2002) (concluding that two months between protected activity and alleged retaliation is sufficient proximity to establish causation). Accordingly, Plaintiff's NYSHRL and NYCHRL claims against Marrero plausibly state a claim for relief and survive the motion to dismiss.

Furthermore, the newly identified document cures the defect that the Court identified in *Warmin I* concerning Plaintiff's retaliation claim against the DOE. There, sufficient proximity existed between the request for accommodation and Plaintiff's termination to create an inference of a causal connection. But the fact that the DOE granted Plaintiff's accommodation request the very day he was terminated rendered implausible Plaintiff's claim that the DOE terminated Plaintiff in retaliation against the request for an accommodation. Plaintiff's amended allegation that Marrero participated in the termination decision restores plausibility to his retaliation claim against the DOE: Marrero's allegedly retaliatory participation in the DOE's decision to terminate undermines the salience of the coterminous grant of Plaintiff's accommodation request. Viewed together, the temporal proximity between the

request for accommodation and the termination, along with Marrero's participation in the termination, creates a plausible causal connection as to the DOE. For the reasons discussed above, the remaining elements of retaliation are plausibly alleged against the DOE. Thus, Plaintiff's retaliation claim against the DOE survives the motion to dismiss.

### 3. Plaintiff's Claim That the DOE Retaliated Against Him by Delaying Employment Paperwork Survives the Motion to Dismiss

In his final claim, Plaintiff alleges that the DOE continued to retaliate against him because of his request for an accommodation well into 2016. According to Plaintiff, he was nominated for a job at P.S. 46 in September 2016. (SAC ¶ 41). In order to finalize his hiring, the DOE's Office of Special Investigations was required to complete employment paperwork for Plaintiff within 30 days. (*Id.*). Liberally construing the SAC, Plaintiff alleges that the DOE purposefully delayed the paperwork, in order to deprive Plaintiff of a job in continued retaliation for his June 2015 request for accommodation. (*Id.*).

Plaintiff has plausibly stated a claim of retaliation under the ADA and the Rehabilitation Act. Plaintiff has alleged that he engaged in a protected activity, a request for accommodation, of which the DOE was aware. (SAC ¶ 22, 27). And Plaintiff claims that the DOE took an adverse employment action: In failing to complete Plaintiff's paperwork, the DOE effectively ensured that he would not be hired. *Kaluczky* v. *City of White Plains*, 57 F.3d 202, 208 (2d Cir. 1995) (finding "refusal to hire" to be an adverse employment action). Whether Plaintiff has sufficiently alleged that a causal connection exists between the

protected activity and the adverse employment action is a closer question, but it is one that the Court ultimately answers in the affirmative.

Causation is sufficiently alleged for purposes of a motion to dismiss where the pleading "allege[s] facts which could reasonably support an inference [that the defendant harbored retaliatory intent]." *Posr* v. *Court Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999). Such an inference may be made where "the protected activity was close in time to the adverse action." *Espinal* v. *Goord*, 558 F.3d 119, 129 (2d Cir. 2009). Here, Plaintiff has alleged that the adverse action occurred in September 2016, more than one year after the protected activity had occurred in June 2015. At first glance, the two events appear too distant in time to create an inference of retaliatory intent. *Compare Clark*, 96 F. Supp. 3d at 252-53 (concluding that four months between protected activity and retaliatory act was likely too much to support an inference of causal connection). Generally, the cases that "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be very close." *Clark County School Dist.* v. *Breeden*, 532 U.S. 268, 273 (2001)

However, causal connection may still be inferred where longer periods of time separate a protected activity and adverse action, if it is plausible that there was no earlier opportunity to retaliate in the manner alleged. *See Grant* v. *Bethlehem Steel*, 622 F.2d 43, 45-46 (2d Cir. 1980) (holding that plaintiff established causal connection despite an eight-month lapse in time when the

defendant was unable to retaliate in the manner alleged any sooner); *see also*
*Massaro* v. *Bd. of Ed. of City Sch. Dist. of N.Y*, — F. App'x —, No. 18-2980-cv,
2019 WL 2183483, at *4 (2d Cir. May 21, 2019) (summary order) (finding
causal connection where a school retaliated against an employee at its earliest
opportunity, after summer break had concluded); *Blanco* v. *Brogan*, 620 F.
Supp. 2d 546, 557 (S.D.N.Y. 2009) (collecting cases for proposition that "[t]he
Second Circuit and the Courts of this District have found a causal connection"
where a defendant retaliated at its first opportunity, even where action was up
to 13 months removed from the protected activity).  In this case, Plaintiff has
alleged that the DOE acted to block his employment at its first opportunity,
when he was nominated for a job in 2016.  These facts support a reasonable
inference of causal connection under the law of the Second Circuit.  Thus,
Plaintiff's claim that the DOE retaliated by delaying his employment paperwork
is plausibly alleged and survives the motion to dismiss.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN
PART and DENIED IN PART.  The motion is DENIED as to (i) Plaintiff's NYSHRL
and NYCHRL retaliation claims against Marrero, and Plaintiff's ADA and
Rehabilitation Act retaliation claims against the DOE, alleging termination in
retaliation to Plaintiff's request for reasonable accommodation; and
(ii) Plaintiff's ADA and Rehabilitation Act retaliation claim against the DOE,
alleging failure to complete paperwork in retaliation to Plaintiff's request for
reasonable accommodation.  Plaintiff's remaining claims, including all claims

as to Defendants Fariña and Mashel, are DISMISSED WITH PREJUDICE.  The Clerk of Court is directed to terminate the motion at docket entry 53.

The parties are ordered to submit a proposed case management plan and joint letter to the Court on or before **August 19, 2019**.

SO ORDERED.

Dated:     July 29, 2019
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge


*Sent by First Class Mail to:*
Adam Thomas Warmin
3316 Shore Pkwy
Brooklyn, NY 11235