UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADAM WARMIN,

                    Plaintiff,

              -v.-

NEW YORK CITY DEPARTMENT OF
EDUCATION and ALEXIS MARRERO,

                    Defendants.

16 Civ. 8044 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Adam Warmin is a special education teacher who worked at
Intermediate School ("I.S.") 254 for the New York City Department of Education
(the "DOE") from 2012 until his termination in 2015.  After his termination,
Plaintiff, proceeding *pro se*, brought this lawsuit against the DOE, Principal
Alexis Marrero, Superintendent Melodie Mashel, and former New York City
Schools Chancellor Carmen Fariña, alleging that they had failed to
accommodate his dyslexia, discriminated against him, retaliated against him,
and ultimately terminated his employment unlawfully.

The Court dismissed Plaintiff's First Amended Complaint (the "FAC") in
its entirety on March 22, 2018, but granted Plaintiff leave to amend his
pleadings as to his claims of retaliation brought against the DOE and Marrero
(collectively, "Defendants").  On July 29, 2019, the Court dismissed certain
claims alleged in Plaintiff's Second Amended Complaint (the "SAC"), but denied
Defendants' motion to dismiss as to:

           i.     Plaintiff's retaliation claims against the DOE
                 brought pursuant to the Americans with

Disabilities Act of 1990 (the "ADA"), 29 U.S.C. §§ 621-634, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, alleging termination in retaliation for Plaintiff's request for reasonable accommodation;

ii.   Plaintiff's retaliation claims against Marrero, brought pursuant to the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290-297, and the New York City Human Rights Law (the "NYCHRL"), N.Y. City Admin. Code §§ 8-101 to 8-131, alleging termination in retaliation for Plaintiff's request for reasonable accommodation; and

iii.   Plaintiff's ADA and Rehabilitation Act retaliation claims against the DOE, alleging failure to complete a background investigation in retaliation for Plaintiff's request for reasonable accommodation.

Defendants now move for summary judgment, arguing that Plaintiff has failed to establish a *prima facie* case of retaliation, and that in any event, Defendants had legitimate, non-retaliatory reasons for taking each of the challenged employment actions.   For the reasons set forth in the remainder of this Opinion, the Court grants the motion for summary judgment in its entirety.

## BACKGROUND[1]

### A.   Factual Background

The Court has previously expounded on the history of this case in the course of resolving Defendants' motion to dismiss Plaintiff's FAC, *Warmin* v.

---

[1]   The facts alleged herein are drawn from Plaintiff's Second Amended Complaint ("SAC" (Dkt. #25)); Defendants' Local Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1" (Dkt. #95)); Plaintiff's Rule 56.1 Counter Statement of Undisputed Facts ("Pl. 56.1" (Dkt. #102)), which comprises both responses to Defendants' assertions of material facts not in dispute and material facts ostensibly in dispute; and Defendants'

*N.Y.C. Dep't of Educ.*, No. 16 Civ. 8044 (KPF), 2018 WL 1441382 *1-5 (S.D.N.Y. Mar. 22, 2018) ("*Warmin I*"), and Defendants' motion to dismiss Plaintiff's SAC, *Warmin* v. *N.Y.C. Dep't of Educ.*, No. 16 Civ. 8044 (KPF), 2019 WL 3409900, at *2-3 (S.D.N.Y. July 29, 2019) ("*Warmin II*").  It therefore mentions here only what is relevant to the instant motion.

### 1.   Plaintiff's Employment at I.S. 254

Plaintiff was diagnosed with dyslexia in 1994, and this condition causes him "difficulty [with] reading and writing."  (Pl. 56.1 ¶ 57).  In October 2012, Plaintiff began working at I.S. 254, a middle school located in District 10 in the Bronx, New York.  (Def. 56.1 ¶ 11; Pl. 56.1 ¶ 58).  Plaintiff worked as a probationary "integrated co-teaching teacher ('ICT')" for sixth through eighth

---

Reply to Plaintiff's Rule 56.1 Statement of Undisputed Material Facts ("Def. Reply 56.1" (Dkt. #106)).  The Court also draws facts from the Declaration of Mohammad Adil Yaqoob in Support of Defendants' Motion for Summary Judgment ("Yaqoob Decl." (Dkt. #92)); the Declaration of Mallory O. Sullivan in Support of Defendants' Motion for Summary Judgment ("Sullivan Decl." (Dkt. #93)); the Declaration of Adam Warmin in Opposition to Defendants' Motion for Summary Judgment ("Warmin Decl." (Dkt. #101)); the Declaration of Katherine G. Rodi in Further Support of Defendants' Motion for Summary Judgment ("Rodi Decl." (Dkt. #107)); and certain exhibits attached to these declarations.

Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein.  Where a fact stated in a movant's Rule 56.1 Statement is supported by evidence and denied with merely a conclusory statement by the non-movant, the Court finds such fact to be true.  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be submitted by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

For convenience, Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment is referred to as "Def. Br." (Dkt. #96); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment is referred to as "Pl. Opp." (Dkt. #100); and Defendants' Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment is referred to as "Def. Reply" (Dkt. #104).

grade special education students from the inception of his employment at I.S. 254 in October 2012 until August 2015.  (Def. 56.1 ¶ 11; Pl. 56.1 ¶¶ 58-59; Def. Reply 56.1 ¶ 58).

Plaintiff received a "satisfactory" rating for the 2012-13 school year.  (Pl. 56.1 ¶ 59).  In the first semester of the 2013-14 school year, Plaintiff received an "effective" rating in eight categories and a "developing" rating in two categories.  (*Id.* at ¶ 61).  Plaintiff's overall rating for the 2013-14 school year was "effective."  (*Id.*).

Defendant Alexis Marrero became Principal of I.S. 254 at the beginning of the 2014-15 school year.  (Def. 56.1 ¶ 14).  On October 1, 2014, the parent of a special education student at I.S. 254 "contacted DOE's Office of Equal Opportunity ... to report that her son had been issued an Individualized Education Plan ('IEP') that referred to him as a 'gangster.'"  (*Id.* at ¶ 15).  DOE's Office of Special Investigations ("OSI") referred the complaint to Marrero for investigation.  (*Id.* at ¶ 16).  Plaintiff subsequently "discovered that there was an ongoing investigation into this comment and contacted [his] union chapter leader of the [United] Federation of Teachers ['UFT'], Verona Dormer[,] to discuss [his] knowledge of this matter."  (Pl. 56.1 ¶ 65).  On November 17, 2014, Plaintiff, Dormer, and Marrero met to discuss the incident.  (Def. 56.1 ¶ 20).  At the meeting, Plaintiff explained that he had typed the comment on behalf of another employee, and that it was a "typographical error ... made due to [Plaintiff's] dyslexi[a]."  (Pl. 56.1 ¶ 67; *see also* Warmin Decl., Ex. 5 (Sworn Affidavit of Verona Dormer)).

After conducting an investigation into the IEP incident, Marrero submitted his findings to OSI, concluding that "[b]ased on the reports of all staff members that were interviewed … [Plaintiff] is at fault for writing the statement on the IEP.  Although [Plaintiff] claimed it was written in error, he admitted to writing it."  (Def. 56.1 ¶¶ 22-23).  Shortly thereafter, on December 3, 2014, Plaintiff was issued a disciplinary letter for including the inappropriate comment in the IEP, which letter explained that regardless of whether Plaintiff's dyslexia played a role in the incident, "Plaintiff had nevertheless 'exercised poor judgment' by including such a reference in the IEP at all."  (*Id.* at ¶ 26; *see also* Yaqoob Decl., Ex. E).[2]  The letter "cautioned Plaintiff to exercise greater care when writing students' IEPs, and to consult with a supervisor for professional development to improve his writing skills[.]"  (Def. 56.1 ¶ 27).

Around the same time, Marrero conducted an "informal observation" of Plaintiff's class.  Marrero rated Plaintiff's teaching as 'effective' in three areas

---

[2]     Plaintiff argues that he meant to write that the student "referred to 'himself as being a gangster,'" that the mistake was inadvertently caused by Plaintiff's dyslexia, that the IEP in question was a "draft being worked on by multiple staff members," and that Plaintiff was "helping one specific staff member [with the IEP] because of technical issues."  (Pl. 56.1 ¶¶ 26, 67; *see also* Warmin Decl., Ex. 5 (Sworn Affidavit of Verona Dormer)).  However, the parties do not dispute that it was inappropriate to have included the comment in a student's IEP.  (*See* Pl. 56.1 ¶ 26 (admitting that including the comment itself was "poor judgment")).  Thus, it is immaterial whether the comment was included at another's behest, or whether the error was caused by Plaintiff's dyslexia.  The decision to include the comment was itself improper and Defendants disciplined Plaintiff accordingly.  (*See* Def. 56.1 ¶¶ 26-27).  Additionally, Plaintiff alleges that Marrero faxed a "fraudulently completed" document to OSI to "look as though [Plaintiff] had intentionally included the 'gangster' comment in the IEP."  (Pl. 56.1 ¶ 68).  Yet because Plaintiff concedes that he did in fact write the inappropriate comment in the IEP (*id.* at ¶ 67), his unsupported allegations that the form that Marrero sent to OSI was a forgery or otherwise improper are immaterial to the resolution of this motion (*see* Def. Reply 56.1 ¶ 69).

and "developing" in three other areas, and he provided detailed written feedback to Plaintiff that included noting deficiencies in his lesson and advising Plaintiff on how to improve his teaching.  (Def. 56.1 ¶¶ 24-25).  On January 29, 2015, Assistant Principal Rhonda Naidich formally observed Plaintiff, and gave him an "ineffective" rating in six categories and an "effective" rating in two categories.  (*Id.* at ¶ 28; Pl. 56.1 ¶ 72; *see also* Yaqoob Decl., Ex. I).  On March 19, 2015, Naidich formally observed Plaintiff again, this time giving him a "developing" rating in five categories and an "effective" rating in three categories.  (Def. 56.1 ¶ 29; Pl. 56.1 ¶ 73).  Naidich provided Plaintiff with "detailed recommendations on how to improve" and "individualized feedback" with each of her evaluations.  (Def. 56.1 ¶¶ 28, 30).

After a March 31, 2015 meeting with Marrero, Naidich, and Dormer, Plaintiff received a second disciplinary letter.  (Def. 56.1 ¶¶ 32-33).  Defendants claim that Plaintiff received the disciplinary letter "for sending out an error-ridden letter concerning a student's attendance and incomprehensible and inappropriate 'post-it' notes he displayed on his bulletin board."  (*Id.* at ¶ 33).  Plaintiff alleges that he gave a colleague "a draft letter that was unsigned and contained typographical errors" "to review and edit before it was sent out to the parent," but claims that the letter was not returned to Plaintiff and was instead sent out to the parent "with many errors."  (Pl. 56.1 ¶¶ 74-75).

In a letter delivered to Plaintiff on April 1, 2015, Marrero advised Plaintiff to request a reasonable accommodation from the DOE for his dyslexia, and provided Plaintiff with a copy of the DOE's Accommodation Request Form.

(Def. 56.1 ¶ 34; Pl. 56.1 ¶ 76).  Thereafter, Plaintiff spoke with his union representative regarding how to complete the form — which, according to the DOE, is "for qualified individuals with a disability to request a reasonable accommodation in order to assist in performing the essential functions of their present [job] assignment."  (Pl. 56.1 ¶¶ 76-77).

Later that month, on April 20, 2015, Marrero again visited Plaintiff's class and conducted an informal observation.  (Def. 56.1 ¶ 35).  Marrero rated Plaintiff's lesson as "ineffective" in two categories, "developing" in three categories, and "effective" in one category.  (*Id.*; *see also* Yaqoob Decl., Ex. L).  Marrero's evaluation included recommendations to assist Plaintiff in addressing several deficiencies that Naidich and Marrero had noted in prior evaluations.  (*See* Yaqoob Decl., Ex. L).

At the close of a teacher's probationary period, the DOE may discontinue the teacher's employment with the DOE or grant the teacher tenure.  (Def. 56.1 ¶¶ 12-13).  Teachers who, "in their supervisor's judgment, lack the capacity to develop effective teaching practice" are not given tenure.  (*Id.* at ¶ 13).  In an email dated May 12, 2015, after being prompted to enter a tenure decision as to Plaintiff, Marrero noted that Plaintiff would be denied tenure.  (*Id.* at ¶ 38; *see also* Yaqoob Decl., Ex. M).  Marrero's email indicated that he had entered this decision regarding Plaintiff's tenure approximately two weeks earlier.  (*See* Yaqoob Decl., Ex. M).

Nearly a month after Marrero's email noting the decision to deny Plaintiff tenure, on or around June 9, 2015, Plaintiff submitted his Accommodation

7

Request Form. (Yaqoob Decl., Ex. N). Plaintiff sought the following accommodations: extra time to complete writing tasks, a word processor and printer, a scanner and screen reader to read documents back to Plaintiff, and someone to check Plaintiff's work for spelling and grammatical errors. (*Id.*; *see also* Def. 56.1 ¶¶ 39-40). Plaintiff explained that these accommodations would "help minimize any mistakes or misconception[s]" on "lesson plans, IEPs, letters to parents, staff members[,] and administrators." (Yaqoob Decl., Ex. N). In his request, Plaintiff noted that his dyslexia "affects [his] job because of recent adverse comments and write up[s] that [his] administrator ha[d] given [Plaintiff] with [his] minor disability." (*Id.*).

On June 19, 2015, the DOE issued a determination that Plaintiff's request was medically warranted and should be partially granted; accordingly, "Plaintiff was given two (2) additional hours to complete writing tasks" as an accommodation, effective September 2015. (Yaqoob Decl., Ex. O; *see also* Def. 56.1 ¶¶ 42-43; Pl. 56.1 ¶ 83). The same day, Plaintiff received a "developing" Measures of Teaching Practice ("MOTP") evaluation for the 2014-15 school year. (Pl. 56.1 ¶ 82; *see also* Yaqoob Decl., Ex. P). Despite the "developing" score on his MOTP evaluation, Plaintiff received an overall "effective" Annual Professional Performance Review score due to an "effective" Measure of Student Learning score that was also factored into his annual rating. (*See* Yaqoob Decl., Ex. P; *see also* Def. 56.1 ¶ 44). Also on June 19, 2015, Plaintiff was issued a letter by DOE Superintendent Melodie Mashel denying him Certification of Completion of Probation with the DOE and notifying Plaintiff

8

that his employment would be terminated with an effective date 60 days hence.
(Def. 56.1 ¶¶ 45-46).  Plaintiff did not return to I.S. 234 for the 2015-16 school
year.  (*See* Def. Reply 56.1 ¶ 58; *see also* Warmin Decl., Ex. 11).

### 2.    Plaintiff's Rescinded Nomination to Work at P.S. 46

On September 6, 2016, Plaintiff was notified that he had been nominated
to work as a teacher at P.S./M.S. 46 ("P.S. 46").  (Pl. 56.1 ¶ 90; *see also*
Sullivan Decl. ¶¶ 8-9).  The DOE informed Plaintiff that his nomination for
employment "was contingent upon the results of his pre-employment
screening, including fingerprinting and a background investigation."  (Sullivan
Decl. ¶ 8).  The DOE's Office of Personnel Investigation ("OPI") is responsible
for, *inter alia*, "screening and conducting security clearance background
investigations for all candidates for employment with the DOE[.]"  (*Id.* at ¶ 1).
Katherine G. Rodi, the executive director of the DOE's Office of Employee
Relations, oversees OPI and stated that:

> 5. The timeframe for OPI's background investigations
> depends on various external factors, including, but not
> limited to volume of applicants, timeliness in responses
> from applicants and prior employers, and timeliness of
> document retrieval from internal and external sources.
>
> 6. Importantly, OPI does not "fast-track" or expedite
> background investigations for candidates simply
> because they make such a request or because their
> hiring principals have an urgent need for staff.

(Rodi Decl. ¶¶ 5-6).  Rodi further explained that "OPI has no contractual,
statutory, or other legal obligation to complete background investigations
within a specific timeframe."  (*Id.* at ¶ 10; *see also* Sullivan Decl. ¶ 16 ("OPI
generally seeks to complete background investigations within 30 days,

although it has no contractual, statutory, or other legal obligation to complete the background check process within a certain time period.")).

Plaintiff alleges that he started working at P.S. 46 on September 8, 2016. (Pl. 56.1 ¶ 90).  On September 14, 2016, OPI began Plaintiff's background investigation and emailed Plaintiff and Kerry Ann Hazell, principal of P.S. 46, to inform them that Plaintiff was not permitted to work for the DOE while his investigation was pending.  (Sullivan Decl. ¶¶ 9, 11).  Plaintiff alleges that he ceased working at P.S. 46 after receiving this email.  (Pl. 56.1 ¶ 91).  That same day, an OPI investigator communicated with Plaintiff by email to request a written explanation of Plaintiff's response to a question on Plaintiff's background questionnaire, wherein Plaintiff admitted to having been previously discontinued or terminated from a teaching position during his probationary period.  (Sullivan Decl. ¶ 12; Warmin Decl., Ex. 14).

Plaintiff responded to OPI's request for a written explanation by email on September 16, 2016, and asked that OPI expedite his clearance.  (*See* Pl. 56.1 ¶ 92; Rodi Decl. ¶ 10; *see also* Warmin Decl., Ex. 15).  Plaintiff's response included as attachments files detailing Plaintiff's Article 78 administrative challenge to the 2015 denial of tenure, and included as an attachment Plaintiff's Accommodation Request Form.  (Pl. 56.1 ¶ 92; *see also* Warmin Decl., Ex. 15).  Defendants dispute that OPI had knowledge of Plaintiff's dyslexia or of his request for a reasonable accommodation.  (Sullivan Decl. ¶ 19 ("At no point during OPI's investigation did OPI have knowledge of Plaintiff's request for a reasonable accommodation ... or of his dyslexia.")).  Nevertheless,

Defendants explain that even if OPI had this knowledge, neither Plaintiff's request for a reasonable accommodation, nor his dyslexia, would be relevant "to OPI's investigation to determine if security clearance could be granted for a position sought at the time it was being sought." (*Id.*).

On September 22, 2016, Plaintiff requested an update as to the status of his investigation and was informed that it was still being reviewed. (Pl. 56.1 ¶ 93). On October 5, 2016, Hazell contacted OPI to inquire as to the status of Plaintiff's background investigation. (Pl. 56.1 ¶ 94; Sullivan Decl. ¶ 14). The OPI investigator responded to Hazell by explaining that OPI "was unable to give a definitive date of completion." (Sullivan Decl. ¶ 14). Shortly thereafter, on October 7, 2016, Hazell withdrew Plaintiff's nomination from consideration. (*Id.* at ¶ 15). OPI was "still processing Plaintiff's background investigation in the ordinary course" when Hazell withdrew the nomination, and Defendants aver that "OPI had been conducting its investigation without delay since mid-September." (Rodi Decl. ¶ 12). After Hazell withdrew Plaintiff's nomination, OPI administratively closed Plaintiff's file, could not continue Plaintiff's background investigation, and therefore did not issue any decision on Plaintiff's background check. (*Id.* at ¶ 13).

## B.    Procedural Background

As noted *supra*, the Court has previously detailed the history of this case. For the reader's convenience, certain of this information is reproduced here:

> On December 18, 2015, Plaintiff filed a Verified Petition under Article 78, N.Y. C.P.L.R. § 7804, in New York State Supreme Court, New York County, against the City of New York, the DOE, and then-Chancellor

> Fariña[.] ... The allegations [in the Verified Petition]
> largely track those in Plaintiff's FAC.   The Supreme
> Court dismissed the Verified Petition with prejudice on
> October 27, 2016.
>
> Plaintiff initiated this action during the pendency of his
> Article 78 proceeding, on October 11, 2016.  (Dkt. #2).
> Following an unsuccessful mediation, Defendants
> sought leave to file a motion to dismiss.  (Dkt. #20).  The
> Court held a pre-motion conference with the parties on
> May 11, 2017, during which it afforded Plaintiff an
> opportunity to amend his complaint and set a schedule
> for briefing on Defendants' motion.  (Dkt. #24).  Plaintiff
> filed his FAC on June 15, 2017.  (Dkt. #25).

*Warmin II*, 2019 WL 3409900, at *2-3 (internal citations omitted).  By Opinion
and Order dated March 22, 2018, the Court dismissed Plaintiff's FAC in its
entirety, holding, *inter alia*, that Plaintiff's claims — including his
discrimination and failure to accommodate claims — were largely precluded by
the Article 78 proceeding.  *See Warmin I*, 2018 WL 1441382, at *7-10.
However, the Court gave Plaintiff leave to amend as to his ADA and
Rehabilitation Act retaliation claims against the DOE, and his NYSRHL and
NYCHRL retaliation claims against Marrero.  *Id.* at *12.

Plaintiff filed the SAC on October 31, 2018, alleging (i) discrimination and
retaliation under the ADA as to all Defendants; (ii) failure to accommodate
under the ADA as to all Defendants; and (iii) discrimination, retaliation, and
failure to accommodate under the NYSHRL and the NYCHRL as to all
Defendants.  (Dkt. #46).  On February 1, 2019, Defendants moved to dismiss
the SAC (Dkt. #53), and on July 29, 2019, the Court granted in part and
denied in part Defendants' motion, *Warmin II*, 2019 WL 3409900, at *9.  The
Court construed the SAC to state five separate claims of retaliation:

> (i) the DOE retaliated against Plaintiff on account of his disability by giving him negative performance reviews and disciplining him;
>
> (ii) the DOE retaliated against Plaintiff on account of his disability by adding a negative notation to Plaintiff's personnel file that may have prevented him from obtaining later employment at the DOE;
>
> (iii) the DOE retaliated against Plaintiff's request for accommodation by terminating Plaintiff;
>
> (iv) the DOE retaliated against Plaintiff's request for accommodation by delaying paperwork needed to finalize Plaintiff's appointment at P.S. 46, causing him to lose the job; and
>
> (v) Defendant Marrero retaliated against Plaintiff's request for accommodation by terminating Plaintiff.

*Warmin II*, 2019 WL 3409900, at *4.[3]  The Court held that the first two claims were preempted by the Article 78 proceedings, but allowed Plaintiff's remaining three claims to advance.  *Id.* at *5-9.

At a conference on February 25, 2020, the parties noted that discovery was substantially complete, except that Plaintiff sought to have Defendants fulfill several minor outstanding document requests.  (*See* Dkt. #84 (transcript)).  The Court directed Defendants to produce these documents and set a briefing schedule for Defendants' anticipated motion for summary judgment.  (*Id.*).  Due to delays occasioned by the COVID-19 pandemic, the

---

[3]    Additionally, after noting that Plaintiff had only been granted leave to replead his ADA and Rehabilitation Act retaliation claims against the DOE and his NYSHRL and NYCHRL retaliation claims against Marrero, the Court dismissed all claims against the other defendants and all claims not alleging retaliation pleaded in the SAC.  *Warmin* v. *N.Y.C. Dep't of Educ.*, No. 16 Civ. 8044 (KPF), 2019 WL 3409900, at *3 & n.4 (S.D.N.Y. July 29, 2019) ("*Warmin II*").

Court granted Defendants several extensions to produce the outstanding discovery and adjusted the briefing schedule for the anticipated motion for summary judgment accordingly.  (*See* Dkt. #88, 90).  On August 21, 2020, Defendants filed their motion for summary judgment and supporting papers. (Dkt. #91-96).  Plaintiff filed his opposition to Defendants' motion, along with supporting papers, on December 9, 2020.  (Dkt. #100-02).  This motion became fully briefed and ripe for decision when Defendants filed their reply papers on December 23, 2020.  (Dkt. #104-07).

## DISCUSSION

### A.    Applicable Law

#### 1.    Summary Judgment Under Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[4]  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson* v. *Liberty Lobby, Inc.*, 477

---

[4]    The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) … chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

U.S. 242, 248 (1986); *see also Jeffreys* v. *City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).

"It is the movant's burden to show that no genuine factual dispute exists" and a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc.* v. *1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  If the movant has met its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" and, toward that end, "must come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations and quotation marks omitted).  The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).  Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)).

### 2.   Motions for Summary Judgment in *Pro Se* Cases

In a *pro se* case, the court must take an additional step and liberally construe the *pro se* party's pleadings "'to raise the strongest arguments that they suggest.'" *McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

This task has been complicated by Plaintiff's imperfect compliance with Local Rule 56.1.  Under that rule, a movant is required to identify admissible evidence in support of each factual assertion in his or her Rule 56.1 statement. *See* S.D.N.Y. Local Rule 56.1(d) ("Each statement by the movant ... pursuant to Rule 56.1(a) ... must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").  Conversely, a non-movant seeking to controvert these factual assertions must also cite to admissible evidence, and where properly supported facts in a Local Rule 56.1 statement are denied with only conclusory assertions, the court will find such facts to be true.  *See id.*; *id.* at 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

Plaintiff's Rule 56.1 statement includes numerous assertions that are unsupported by cited materials or otherwise conclusory, and thus insufficient to create a genuine dispute of material fact.  *See Wali* v. *One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("[T]he Court may not rely solely on the statement of undisputed facts contained in [a] party's Rule 56.1 statement; it also must be satisfied that the ... party's assertions are supported by the record." (citing *Vt. Teddy Bear*, 373 F.3d at 244)).  "*Pro se* litigants are ... not excused from meeting the requirements of Local Rule 56.1." *Id.* (citing *Vt. Teddy Bear*, 373 F.3d at 246).  Nevertheless, even where there is incomplete

compliance with the Local Rules, a court retains discretion "to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Id.*; *see generally Cain* v. *Esthetique*, 182 F. Supp. 3d 54, 63 (S.D.N.Y. 2016) (discussing a court's discretion with respect to *pro se* submissions opposing motions for summary judgment), *aff'd sub nom. Cain* v. *Atelier Esthetique Inst. of Esthetics Inc.*, 733 F. App'x 8 (2d Cir. 2018) (summary order).  To be fair to all parties, the Court will rely principally on its own thorough review of the record.

### 3.    Retaliation Law Generally

#### a.    The ADA, the Rehabilitation Act, and the NYSHRL

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter[.]"  42 U.S.C. § 12203(a).  The Rehabilitation Act prohibits "any program or activity receiving Federal financial assistance" from discriminating against an employee "solely by reason of her or his disability." 29 U.S.C. § 794(a).  "Like many other federal anti-discrimination provisions, the Rehabilitation Act also prohibits retaliation against a person for opposing any practice made unlawful by the Act." *Dodd* v. *City Univ. of N.Y.*, — F. Supp. 3d —, No. 17 Civ. 9932 (PAE), 2020 WL 5750715, at *17 (S.D.N.Y. Sept. 25, 2020) (quoting 29 U.S.C. § 794(d); 29 C.F.R. § 1614.01(b)).  The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate ... against any person because he or she has opposed any practices forbidden

17

under this article or because he or she has filed a complaint, testified or

assisted in any proceeding under this article."  N.Y. Exec. Law § 296(7).

Retaliation claims under the ADA, the Rehabilitation Act, and the

NYSHRL are governed by the burden-shifting framework set forth in *McDonnell*

*Douglas Corp.* v. *Green*, 411 U.S. 792, 802-04 (1973).  *See Widomski* v. *State*

*Univ. of N.Y. at Orange*, 748 F.3d 471, 476 (2d Cir. 2014); *see also Vega* v.

*Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).[5]  Under this

framework,

> the plaintiff bears the initial burden of establishing a
> *prima facie* case of discrimination.  If the plaintiff does
> so ... the defendant [must] articulate some legitimate,
> nondiscriminatory reason for its action.  If such a
> reason is provided, plaintiff ... may still prevail by
> showing ... that the employer's determination was in
> fact the result of [discrimination].

*Holcomb* v. *Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (internal quotation

marks and citations omitted).

To establish a *prima facie* case of retaliation under the ADA, the

Rehabilitation Act, or the NYSHRL, a plaintiff must demonstrate that: "[i] []he

engaged in protected activity, [ii] the employer was aware of this activity,

[iii] []he was subjected to an adverse employment action ..., and [iv] a causal

connection existed between the alleged adverse employment action and [his]

protected activity."  *McGuire-Welch* v. *House of the Good Shepherd*, 720 F. App'x

---

[5]     The New York State Legislature passed several amendments to the NYSHRL in
June 2019, the effect of which is to render the standard for claims closer to the
standard under the NYCHRL.  *See* A8421/S6577 (as amended by S6594/A8424).
These amendments were signed into law on or about August 12, 2019.  Significantly,
however, these amendments only apply to claims that accrue on or after the effective
date of October 11, 2019.

58, 62 (2d Cir. 2018) (summary order) (citing *Weixel* v. *Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)).  An adverse employment action is defined as one that is "materially adverse with respect to the terms and conditions of employment," and it includes termination.  *Flieger* v. *E. Suffolk BOCES*, 693 F. App'x 14, 17 (2d Cir. 2017) (summary order) (quoting *Davis* v. *N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015)).  Protected activities include requests for reasonable accommodations.  *Id.* at 18; *see also Weixel*, 287 F.3d at 149.  Causation can be shown, *inter alia*, through indirect proof "that the protected activity was closely followed in time by adverse action." *Clark* v. *Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015) (internal quotation marks and citation omitted).

Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision.  *See Treglia* v. *Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002).  "If ... the defendant ... points to evidence of a legitimate, nonretaliatory reason for the challenged employment decision, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation."  *Cifra* v. *G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

### b.    The NYCHRL

Claims brought under the NYCHRL must be reviewed "independently from and 'more liberally' than their federal and state counterparts."  *Loeffler* v. *Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (quoting *Williams* v.

*N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)); *see generally Mihalik*
v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)
(noting that courts must "constru[e] the NYCHRL's provisions 'broadly in favor
of discrimination plaintiffs, to the extent that such a construction is reasonably
possible'" (quoting *Albunio* v. *City of N.Y.*, 16 N.Y.3d 472, 477-78 (2011))).
Under the NYCHRL, a plaintiff's burden is less because he is not required to
show an adverse employment action and need only "show differential
treatment — that [he] was treated 'less well' — because of a discriminatory
intent." *Mihalik*, 715 F.3d at 110.

　　To demonstrate retaliation under the NYCHRL, Plaintiff must show that
he "took an action opposing [his] employer's discrimination, and that, as a
result, the employer engaged in conduct that was reasonably likely to deter a
person from engaging in such action[.]" *Mihalik*, 715 F.3d at 112 (citations
omitted).  While the drafters of the NYCHRL expressed a preference for claims
to be resolved by juries, *see Williams*, 872 N.Y.S.2d at 39, "summary judgment
will still be appropriate where a plaintiff does not adduce sufficient evidence of
a link between [his] termination and a discriminatory motive and where [he]
fails to rebut convincing evidence that [his] employer treated [him] differently
for legitimate business reasons[.]" *Kerm Mastour* v. *Fin. Indus. Regul. Auth.,
Inc.*, 814 F. Supp. 2d 355, 367 (S.D.N.Y. 2011).

**B.    Analysis**

　　Defendants argue that Plaintiff fails to establish a *prima facie* case for
retaliation because Plaintiff cannot demonstrate: (i) causation between his

request for reasonable accommodation and his termination in 2015;

(ii) causation between his request for reasonable accommodation and any

purported failure to complete Plaintiff's 2016 background investigation; and

(iii) that he suffered any adverse employment action arising from the 2016

background investigation.  Defendants further contend that even if Plaintiff

could make out a *prima facie* case for retaliation, Defendants had legitimate,

non-discriminatory reasons to discontinue Plaintiff's employment and to

conduct a background investigation.  Plaintiff argues that the proximity

between his request for accommodation and his termination establish

causation.

### 1.    The Court Grants Summary Judgment as to Plaintiff's Claims Alleging Retaliatory Termination

Plaintiff argues that the DOE and Marrero retaliated against him by

discontinuing his employment and failing to award him tenure after he

requested a reasonable accommodation for his dyslexia.  (*See* Pl. Opp. 11-12).

Defendants concede that Plaintiff engaged in protected activity when he

requested a reasonable accommodation, and that he suffered an adverse

employment action when he was denied tenure and/or terminated.  (*See*

*generally* Def. Br; Def. Reply).[6]  However, the parties disagree as to whether

---

[6]    Defendants state that because Plaintiff was a probationary employee, "he had no guarantee of continued employment," suggesting — but not arguing outright — that Plaintiff's termination was not an adverse employment action.  (Def. Br. 15). Termination is clearly an adverse employment action.  *See, e.g.*, *Carmody* v. *City of N.Y.*, No. 05 Civ. 8084 (HB), 2006 WL 3317026, at *11 (S.D.N.Y. Nov. 13, 2006).  The Second Circuit has held that denial of tenure in this context can also be an adverse employment action.  *See Tolbert* v. *Smith*, 790 F.3d 427, 436 (2d Cir. 2015).  Thus, in the interest of completeness, the Court finds that Plaintiff has established that he suffered an adverse employment action for his retaliatory termination claims.

Plaintiff has established a causal connection between his request for reasonable accommodation and his termination. Plaintiff argues that temporal proximity establishes the requisite causal connection (*see* Pl. Br. 10-12), while Defendants argue that the decision to terminate Plaintiff occurred before Plaintiff engaged in the protected activity (*see* Def. Br. 10-12; Def. Reply 4-5). Defendants argue further that even if Plaintiff could make out a *prima facie* case of retaliation, they had legitimate, non-discriminatory reasons to discontinue Plaintiff's employment. (*See* Def. Br. 14-16; Def. Reply 5-7).

In particular, Defendants argue that Plaintiff cannot establish causation because — citing Marrero's May 12, 2015 email on the subject — they had already made the decision to terminate Plaintiff, or were in the process of making that decision, nearly a month before Plaintiff made his request for reasonable accommodation. (*See* Def. Br. 10-12; Def. Reply 4-5). The Court agrees. The record demonstrates that Plaintiff engaged in the protected activity of requesting a reasonable accommodation on June 9, 2015. (*See* Yaqoob Decl., Ex. N; *see also* Def. 56.1 ¶¶ 39-40). Yet, Marrero's May 12, 2015 email establishes that the adverse employment action — Defendants' decision to deny Plaintiff tenure and discontinue his employment — was made or was in process by May 12, 2015, at the very latest, and likely several weeks earlier than that. (Def. 56.1 ¶ 38; *see also* Yaqoob Decl., Ex. M). Thus, although Plaintiff did not learn of the adverse employment action until June 19, 2015 (*see* Def. 56.1 ¶¶ 45-46), several weeks after requesting his accommodation, the record establishes that the decision was made before Plaintiff engaged in the protected

activity now at issue.  *See, e.g.*, *McAllister* v. *Queens Borough Pub. Libr.*, 309 F. App'x 457, 459 (2d Cir. 2009) (summary order) ("McAllister failed to state a claim for retaliation because the only adverse employment action by his employer that McAllister alleges is his termination, which occurred before his protected activity, filing a charge with the administrative agency."); *Risco* v *McHugh*, 868 F. Supp. 2d 75, 114 (S.D.N.Y. 2012) ("Since Risco has established that her supervisors began the process of terminating her employment before she engaged in protected activity, she cannot rely on temporal proximity to satisfy the causal connection element of a prima facie case of Title VII retaliation.").

Plaintiff raises a number of arguments to attempt to salvage these retaliation claims.  Construing Plaintiff's papers "'to raise the strongest arguments that they suggest[,]'" *McPherson*, 174 F.3d at 280 (quoting *Burgos*, 14 F.3d at 790), the Court discerns two points disputing Defendants' assertion that there is no causation.  *First*, Plaintiff argues that the May 12, 2015 email does not establish that Defendants had determined to deny Plaintiff tenure at that time.  (*See* Pl. Opp. 11-12).  *Second*, Plaintiff argues that although he did not formally submit his request for reasonable accommodation until around June 9, 2015, Defendants knew about his disability and/or knew he would request a reasonable accommodation at an earlier date.  However, neither argument is persuasive.

Plaintiff first argues that the May 12, 2015 email does not in fact establish that Defendants had already made a determination to deny Plaintiff

tenure, or were at the very least in the process of doing so. (Pl. Opp. 11). Specifically, Plaintiff argues that "[n]owhere does it mention denial [in the email], leading a reasonable person to believe that as of May 12, 2015, the Superintendent's office was under the presumption that [Plaintiff's] probation would be extended or [Plaintiff] was going to receive tenure." (*Id.*). Plaintiff further contends that the email:

> does not give a proper timeline as to when Principal Marrero made the denial of tenure decision, only indicating that he claimed to have entered the information "a couple of weeks ago[.]" Based on Sharon Berger's e-mail written therein, [the Superintendent's office] did not properly receive that information in a timely manner, and the only options available for Marrero to enter at the time was an extension of probation or receipt of a tenure packet.

(Pl. 56.1 ¶ 38). The Court disagrees with Plaintiff's contention that the email fails to mention denial. To the contrary, when Sharon Berger, a representative from the Superintendent's office, requested that Marrero enter a decision as to Plaintiff's tenure, Marrero's response on May 12, 2015, states that he "entered the decision a couple of weeks ago," and includes a screenshot or excerpt from the system noting that his final recommendation as to Plaintiff's tenure is "Deny (No License Revocation)." (Yaqoob Decl., Ex. M). Thus, the email establishes that on May 12, 2015, at the very latest, Defendants were contemplating denying Plaintiff tenure. *See Clark Cnty. Sch. Dist.* v. *Breeden*, 532 U.S. 268, 272 (2001) (holding that the fact of temporal proximity was "immaterial in light of the fact that petitioner concededly was contemplating the [adverse employment act] before it learned of the suit [*i.e.*, the protected

activity]"); *Risco*, 868 F. Supp. 2d at 114 (holding that plaintiff failed to make out a *prima facie* case for retaliation on motion for summary judgment where defendant "had taken steps to discharge" plaintiff before plaintiff engaged in protected activity).

Plaintiff next contends that although he did not request a reasonable accommodation until June 9, 2015, Defendants were on notice that Plaintiff would be requesting such an accommodation earlier.  Specifically, Plaintiff contends that because Marrero proactively provided Plaintiff "with information on filing a request for reasonable accommodation on or about April 1, 2015," the Court should consider Plaintiff to have engaged in protected activity on that date instead of on January 9, 2015.  (*See* Pl. Opp. 12).  Similarly, Plaintiff argues that Defendants knew that Plaintiff may request reasonable accommodations because Marrero was aware of Plaintiff's dyslexia "at least as of March 26, 2015," if not "as of November 2014."  (*Id.*).  But neither having a disability, nor learning from a supervisor that one may consider requesting a reasonable accommodation because of a disability, qualifies as a protected activity.  At most, these arguments attempt to raise claims of discrimination, *i.e.*, that Marrero treated Plaintiff differently upon learning of his dyslexia.  But the Court has already determined that such discrimination claims would be precluded and dismissed with prejudice.  *See Warmin I*, 2018 WL 1441382, at *9.  Thus, Plaintiff fails to establish any causal connection between his request for reasonable accommodation and his termination.

Even if Plaintiff were able to make out a *prima facie* case for retaliation —
and the Court has determined that he is not — Defendants have established
that there were legitimate, non-discriminatory reasons to discontinue Plaintiff's
employment.  Defendants explain that Plaintiff was terminated "because of his
various pedagogical insufficiencies and disciplinary issues." (Def. Reply 5).
Specifically, Defendants cite to Plaintiff's numerous poor performance reviews,
multiple disciplinary letters, and contemporaneous comments from Marrero
and Naidich as to Plaintiff's failure to act on their recommendations to improve
his performance.  (*See* Yaqoob Decl., Ex. E-L).  Plaintiff claims that Defendants'
proffered reasons and supporting evidence are pretextual, arguing that he did
not engage in misconduct and that his observation ratings were mixed.  (Pl. 13-
14).  But as Defendants rightfully note, Plaintiff's disagreement with
Defendants' decisions to discipline Plaintiff, and with Plaintiff's performance
evaluations, is insufficient to establish that those proffered reasons are
pretextual.  (Def. Reply 5-6).  *See, e.g., Goonewardena* v. *N.Y. Workers Comp.
Bd.*, 258 F. Supp. 3d 326, 339 (S.D.N.Y. 2017), *aff'd sub nom. Goonewardena*
v. *N.Y. State Workers' Comp. Bd.*, 788 F. App'x 779 (2d Cir. 2019) (summary
order) ("'[T]o determine whether an employer's putative purpose is a pretext, a
fact-finder need not, and indeed should not, evaluate whether a defendant's
stated purpose is unwise or unreasonable.' 'Rather, the inquiry is directed
toward determining whether the articulated purpose is the actual purpose for
the challenged employment-related action.'" (internal citations omitted)
(quoting *DeMarco* v. *Holy Cross High Sch.*, 4 F.3d 166, 170-71 (2d Cir. 1993))).

Here, Defendants have made a strong showing that their articulated reason is the actual reason for Plaintiff's denial of tenure and termination.

Because Defendants began the process of terminating Plaintiff — or perhaps had already made the decision to terminate Plaintiff — before he engaged in protected activity, the Court determines that Plaintiff fails to establish a *prima facie* case for retaliation against the DOE under the ADA or Rehabilitation Act, or against Marrero under the NYSHRL or the NYCHRL.[7]   In any event, Defendants have established that there were legitimate, non-discriminatory reasons to terminate Plaintiff.   Therefore, the Court grants summary judgment to the DOE on Plaintiff's ADA and Rehabilitation Act claims, and to Marrero on Plaintiff's NYSHRL and NYCHRL claims, alleging termination in retaliation for Plaintiff's request for reasonable accommodation.

> ### 2. The Court Grants Summary Judgment as to Plaintiff's Claim Alleging Retaliatory Failure to Complete Plaintiff's Background Investigation

Plaintiff alleges that the DOE retaliated against him by failing to complete his background investigation with sufficient alacrity, causing the principal of P.S. 46 to withdraw his nomination for a teaching job.  (Pl. Opp. 15-16).[8]

---

[7]   Under the NYCHRL, summary judgment is proper where "a plaintiff does not adduce sufficient evidence of a link between [his] termination and a discriminatory motive and where [he] fails to rebut convincing evidence that [his] employer treated [him] differently for legitimate business reasons[.]" *Kerm Mastour* v. *Fin. Indus. Regul. Auth., Inc.*, 814 F. Supp. 2d 355, 367 (S.D.N.Y. 2011).  Because Plaintiff fails to establish any causal connection between Defendants' decision to terminate him and his request for reasonable accommodation, summary judgment is proper even under the NYCHRL's broader standard.

[8]   Plaintiff claims that OSI was responsible for completing his background investigation. However, Defendants offer conclusive evidence that OPI, not OSI, was responsible for completing Plaintiff's background investigation, and was in fact the organization

Defendants argue that Plaintiff suffered no adverse employment action, and that Plaintiff fails to establish any causal connection between his request for a reasonable accommodation and any purported delay in OPI's performance of his background check.  (Def. Br. 12-14; Def. Reply 7-9).  As discussed in greater detail below, the Court agrees with Defendants and grants their motion for summary judgment on this claim.

In *Warmin II*, the Court denied Defendants' motion to dismiss and accepted as true Plaintiff's allegation that the DOE was required to complete Plaintiff's employment paperwork within 30 days.  2019 WL 3409900, at *8-9.  In doing so, the Court accepted that the DOE's failure to complete Plaintiff's paperwork in the required timeframe was akin to refusal to hire.  *Id.*  However, on summary judgment, Plaintiff has failed to offer any evidence to support his allegation that OPI, the organization responsible for carrying out the background investigation, is obligated to complete said investigation within 30 days.  (*See generally* Pl. Opp.; Warmin Decl.).  To the contrary, the record demonstrates that OPI had no such obligation.  Specifically, "OPI has no contractual, statutory, or other legal obligation to complete background investigations within a specific timeframe."  (Rodi Decl. ¶ 10; *see also* Sullivan Decl. ¶ 16).

Nor is there any evidence that OPI delayed unduly in processing or pursuing Plaintiff's background investigation.  On October 7, 2016, when

---

carrying out that investigation.  (*See* Sullivan Decl. ¶¶ 5, 11-19; Rodi Decl. ¶¶ 3, 9-14; Def. 56.1 ¶ 51; *see also* Warmin Decl., Ex. 14).

Principal Hazell withdrew Plaintiff's nomination, thus ending the investigation,
it had been roughly one month since Plaintiff submitted his initial paperwork
on September 7, 2016, and roughly three weeks since OPI began their
investigation on September 14, 2016.  (*See* Sullivan Decl. ¶¶ 10-11, 15).  And
as set forth in the Rodi Declaration, when Hazell withdrew Plaintiff's
nomination, "OPI had been conducting its investigation without delay since
mid-September, and was still well within the normal timeframe for an OPI
investigation."  (Rodi Decl. ¶ 12).  This Court is unwilling to impose a deadline
on OPI to complete background investigations where none exists.  Accordingly,
Plaintiff has not established that he suffered an adverse employment action
when OPI failed to complete his background investigation in thirty days.[9]

---

[9]    Defendants also claim that OPI had no knowledge of Plaintiff's request for reasonable accommodation, and thus there could be no causal connection between Plaintiff's protected activity and any purported delay.  (Def. Br. 13-14).  Plaintiff argues he included this information in an email to an OPI investigator, a fact that Defendants concede.  (*See* Pl. Opp. 16; Def. Reply 8).  Although Defendants may be correct that the information about Plaintiff's protected activity was "buried" in voluminous attachments to his email to the investigator (Def. Reply 8), the Court cannot conclude on this record that there is no disputed issue of material fact as to whether the OPI investigator knew this information because Defendants did not include any declaration or other sworn testimony from the investigator herself on the subject.

However, Defendants are correct that too much time passed between Plaintiff's June 9, 2015 request for reasonable accommodation, and OPI's purportedly slow investigation in September and October of 2016 — a period of more than 14 months — to establish an inference of causation based solely on temporal connection.  *See, e.g.*, *Clark* v. *Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 252 (S.D.N.Y. 2015) (concluding that four months between protected activity and retaliatory act was likely too much to support an inference of causal connection).  In *Warmin II*, the Court found that the lack of temporal proximity was not fatal to Plaintiff's claims at the pleading stage because causal connection could be inferred absent "an earlier opportunity to retaliate."  2019 WL 3409900, at *9.  However, the record now establishes that such causal connection cannot be inferred because in the intervening months, Plaintiff "accepted a position in School 232" as a substitute teacher in July 2016.  (Pl. 56.1 ¶ 89).  Thus, even if Plaintiff could establish that he suffered an adverse employment action when OPI failed to complete his background investigation within 30 days, the Court would still grant Defendants' motion for summary judgment because Plaintiff fails to establish a causal connection between the protected activity and purported adverse employment action.

Finally, even if Plaintiff could establish a *prima facie* case for retaliation based on OPI's purportedly slow pursuit of his background investigation, Defendants have offered legitimate, non-discriminatory reasons for any delay, and for Hazell's withdrawal of Plaintiff's nomination.  *First*, Defendants have explained why OPI may take longer than thirty days to conduct a background investigation:

> 4. OPI has the duty, under New York State law and Chancellor's Regulation C-105, to thoroughly investigate the background of every DOE individual seeking employment with the DOE and DOE vendors.
>
> 5. The timeframe for OPI's background investigations depends on various external factors, including, but not limited to volume of applicants, timeliness in responses from applicants and prior employers, and timeliness of document retrieval from internal and external sources.

(Rodi Decl. ¶¶ 4-5).  Part of the delay can also be attributed to Warmin's need to supplement his application.  (Sullivan Decl. ¶ 12; Warmin Decl., Ex. 14-15).  *Second*, Hazell's decision to withdraw Plaintiff's nomination is clear from the record: with a staffing shortage at P.S. 46, Hazell could not wait for the completion of Plaintiff's background investigation.  (*See* Def. 56.1 ¶ 54).  Plaintiff offers no evidence that either explanation is pretextual and the Court finds none.  Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's ADA and Rehabilitation Act claim against DOE alleging retaliatory failure to complete Plaintiff's background investigation.[10]

---

[10]     To the extent Plaintiff attempts to argue the merits of a failure to accommodate claim (*see* Pl. Opp. 14-15), the Court has already "found that each of Plaintiff's discrimination and failure to accommodate claims was precluded under the doctrine of collateral estoppel, because the issues underlying each had been raised and rejected in Plaintiff's Article 78 proceeding."  *Warmin II*, 2019 WL 3409900, at *3 (citing *Warmin I*, 2018 WL

## CONCLUSION

For the reasons stated in this Opinion, Defendants' motion for summary judgment is granted in full.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

The Clerk of Court is further directed to mail a copy of this Opinion to Plaintiff at his address of record.

SO ORDERED.

Dated:        February 11, 2021
              New York, New York

_____
                KATHERINE POLK FAILLA
                United States District Judge

1441382, at *7-10).  Thus, the Court will not consider any attempt to revive Plaintiff's failure to accommodate claims, or any other claims previously dismissed with prejudice.

31